ZIADE v. UNITED STATES (No. 2679)[1]

REAPPRAISEMENT—INVOICE PRICE.

The fact that importer was a partner in the firm from whom he purchased the goods does not prevent the relationship of buyer and seller from existing between them; and, where it was shown that the invoice price represented cost of production and a substantial profit and there was no other evidence of value, the board's affirming of a higher reappraisement was without any substantial evidence to support it, and is reversed.

United States Court of Customs Appeals, April 17, 1926

APPEAL from Board of United States General Appraisers, Circ. Reap. 35913

[Reversed.]

*Curie, Lane & Wallace* (*William Young* of counsel) for appellant.
*Charles D. Lawrence*, Assistant Attorney General (*John F. Kavanagh*, special attorney, of counsel), for the United States.

[Oral argument March 19, 1926, by Mr. Young and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the Board of General Appraisers in reappraisements Nos. 29998–A, 29999–A, 30144–A, 30767–A, 30768–A, 31473–A, 35242–A, 35463–A, 35464–A, 35465–A, 35466–A, 38659–A, 38660–A, and 38882–A.

Imported merchandise, consisting of lace articles, was entered at the prices stated in the invoices. The local appraiser advanced the entered values 25 per centum. The importer appealed to reappraisement.

On the trial before the general appraiser the importer testified that he purchased the imported articles from the firm of Ziade & Morai, of Paris, France; that he organized the firm in 1923, and that it consisted of himself and one Morai; that his interest in the firm was that of a partner; that he had never received any of the firm's profits, but was entitled to a partner's share therein; that Mr. Morai had no financial interest in the importer's business in New York; that the only relationship existing between the firm of Ziade & Morai, and the importer's house in New York was that of seller and purchaser; that

---

[1] T. D. 41551.

the business-of the firm of Ziade & Morai was to purchase laces and embroideries in the open market, have them made up into articles like those in question, and sell the finished product at a profit; that, in order to establish prices for such finished articles, they ascertain the actual cost of the materials and labor, and add thereto a sum sufficient to give the firm a profit of 25 per centum; that the importer had been taking the entire production of the firm, but that it was the purpose of the firm to sell to all purchasers; that the importer had no special arrangement with the firm of Ziade & Morai as to the prices he was to pay for the imported articles, and that he paid the prices stated in the invoices, which included the cost of the labor and materials, plus the usual profit.

The Government introduced in evidence a report of a special agent, Exhibit 7. This report was made with reference to prior importations of similar merchandise, and does not relate directly to the merchandise under consideration. It relates the substance of a conversation had with Madam Chauvrat, who, prior to the shipment of the merchandise under consideration, had sold similar merchandise to the importer. It contains a list of prices, at which she sold such merchandise, which included the cost of labor and materials, and a profit of 10 per centum. Mr. Morai was reported to have said that his firm expected to sell at prices which would include a profit *of at least 10 per centum* and did not intend to sell its merchandise to any one in the United States other than Mr. Ziade, the appellant; that he did not expect to offer the products of the firm to buyers in France under the conditions existing at that time, but that he might do so at a later date. What the conditions were which influenced Mr. Morai in this policy were not explained.

The special agent concludes his report with the following statement:

* * * In conclusion it was almost impossible to obtain any information relative to the market value on the articles covered by consular invoice No. 43176, for the reason that the shipper, Madam Chauvrat, could not produce (owing to very poor office and book records) sufficient facts to satisfy me that the prices for the articles represented on the consular invoice really cover market value; no evidence whatever could be shown to the undersigned relative to the cost of sewing and embroidery, and while the shipper's statement that the amounts for above operations *included in the invoice prices contain a profit, nothing to the contrary could be obtained to refute her statement.* It is further impossible to obtain any comparison of sales to other firms either in home market or for exportation to the United States, for the reason that Madam Chauvrat is an individual and she claims that she has never done any business with any concern in the United States other than Mr. Ziade, and further that articles made by her for Mr. Ziade, were not, in her opinion, in great demand in the home market. * * * (Italics ours.)

Upon this record the general appraiser sustained the appraised value. The appellant filed an application with the Board of General

Appraisers for a review of the findings and judgment of the general appraiser, pursuant to the provisions of section 501 of the Tariff Act of 1922, the pertinent part of which reads as follows:

SEC. 501. * * * The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an *application for its review* shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and after argument on the part of the parties if requested by them or either of them, shall *affirm, reverse,* or *modify* the *decision* of the *general appraiser* or *remand* the case to the general appraiser for *further proceedings,* and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an act entitled "An Act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911. (Italics ours.)

The reviewing court, in affirming the judgment of the general appraiser, held that the appellant had failed to prove by evidence worthy of belief that the relationship of buyer and seller existed between the firm of Ziade & Morai and the appellant. In this connection the board, in its opinion, said:

* * * It is hardly *to be assumed* that the relation of buyer and seller in the ordinary acceptance of the term exists between the importer and the shippers in view of the fact that the importer admits that he has money invested in the shipping firm and has never received any accounting from them.

The importer states that the invoice prices contain *25 per cent profit* to the shippers, while the junior partner of that firm states that it was intended in making the invoice prices to include *at least 10 per cent.* (Italics ours.)

We are unable to concur in the conclusion reached by the board. The importer testified positively that he purchased the imported merchandise from the firm of Ziade & Morai at prices established by the seller, and that such prices represented the cost of labor and materials, plus a profit of 25 per centum. It is true that the Government agent reported that Mr. Morai had said, prior to the exportation of the involved merchandise, that he expected to establish prices which would give the firm a profit of at least 10 per centum. This contradiction, if it is such, is not a sufficient basis for the rejection of all of the testimony given by the importer. He may have been mistaken as to the exact amount of profit included in the invoice prices. It

may be that only 10 per centum profit was added to the cost of production. But whether it was 25 per centum, or only 10 per centum, the evidence clearly establishes that the relationship of buyer and seller actually existed between the firm of Ziade & Morai and the importer, and that the prices paid by the importer represented the cost of manufacture of the imported merchandise plus a substantial profit for the seller. The fact that the importer was a member of the firm from which the merchandise was procured does not, in our opinion, preclude the existence of the relationship of buyer and seller between the importer and the firm of which he is a member. This situation is not unusual in the business world. It was perfectly proper for the customs officials to investigate in order to determine the *bona fides* of the transaction. They did so, and the report made by the Government agent is sufficiently comprehensive to show that every reasonable effort was made to ascertain the facts. This report does not in any material respect contradict the testimony of the importer. His testimony can not legally be rejected by a reviewing court upon suspicion merely.

It having been established that the relationship of buyer and seller existed between the importer and the firm of Ziade & Morai, and that the importer purchased the imported merchandise at prices based upon the cost of production, which prices were stated in the invoices and included in the entries, the importer was entitled to a finding by the general appraiser, there being no other legal evidence of foreign values, that the invoice prices represented the foreign values of the merchandise. *Lloyd Co.* v. *United States*, 9 Ct. Cust. Appls. 280, T. D. 38217; *United States* v. *Bloomingdale*, 10 Ct. Cust. Appls. 149, T. D. 38400; *United States* v. *Sabin*, 12 Ct. Cust. Appls. 521, T. D. 40731.

The judgment of the general appraiser, being not only without evidence to support it but contrary to the evidence, should have been reversed by the Board of General Appraisers.

There is no substantial evidence in the record to support the judgment of the board, and, therefore, it must be reversed. *United States* v. *Johnson Co.*, 9 Ct. Cust. Appls. 258, T. D. 38215; *Kuttroff, Pickhardt & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 17, T. D. 40861; *Sandoz Chemical Works* v. *United States*, 13 Ct. Cust. Appls. 466, T. D. 41365; *Metz & Co. (Inc.)* v. *United States*, 13 Ct. Cust. Appls. 412, T. D. 41340; *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436.

The judgment is *reversed*.