UNITED STATES *v.* ANDREWS & CO. (No. 2877)[1]

United States Court of Customs Appeals, May 7, 1927

*Charles D. Lawrence,* Assistant Attorney General (*Thomas J. Canty,* special attorney, of counsel), for the United States.

*Walter Evans Hampton (Jerome G. Clifford* of counsel) for appellee.

[Oral argument April 19, 1927, by Mr. Lawrence and Mr. Clifford]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in reappraisements 47721–A, 54125–A, 56829–A, and 48198–A.

The merchandise consists of optical textbooks, entitled "Visual Optics and Sight Testing."

Some of the books were purchased and entered at $2 each, less 2½ per centum. Others were purchased and entered at $2.75 each. They were appraised at 15s. 9d. each. The importers appealed to reappraisement.

It appears from the record that the importers purchased the books in large quantities; that they imported 850 books in shipments of 100 to 150, from September, 1924, to November, 1925; that the largest number of books sold at one time in England is 12; that they are usually sold for home consumption in quantities of from 6 to 12; and that the wholesale market value abroad in those quantities is 15s. 9d.

The importer introduced in evidence Exhibit 3—an affidavit of one Lionel Laurance, a director of the company from which the books were purchased by the importer.

The pertinent part of the exhibit reads as follows:

(1) That he is director of the School of Optics, Limited, at London, England.

(2) That as such he is familiar with the business of this school, and has full knowledge of the books sold by said school in England; that is to say, as to the prices and the persons and the firms or corporate entities to whom the books are sold.

(3) That he is likewise familiar with the books sold by such school to the American Optical Company, of Southbridge, State of Massachusetts, United States of America.

[1] T. D. 42193.

(4) Deponent refers to a shipment made by the school to the American Optical Company, per S. S. *Homeric*, in the latter part of October, 1924, contained in one case, marked A. O. C.–66, and consisting of one hundred (100) volumes of the book entitled "Visual Optics and Sight Testing."

(5) That said books were sold to the American Optical Company at two dollars less 2½ per cent discount, f. o. b.

(6) That the American Optical Company purchase large quantities of such books and are deponent's largest single customer, so that it will be readily appreciated that the large orders of the American Optical Company are reflected in manufacturing cost.

(7) That the said company has purchased from the School of Optics 850 books from October, 1924. These purchases are large compared with the small quantity sold to any one buyer in England.

(8) Seeing that there are no individual English buyers for large quantities of these books, there is not and can not be any domestic price equivalent to that at which the books are supplied to the American Optical Company.

(9) Individual sales to individual houses in England are only in small quantities, such quantity not exceeding, as a rule, twelve (12) copies, and very often only half a dozen copies at a time; that in selling in such quantities the price is 15/9.

It also appears from Exhibit 4—a report of a Government customs agent introduced by the Government—that the books are usually sold abroad in quantities of 6 to 12; that the wholesale market value abroad in those quantities is 15s. 9d.; and that "a few entries were found showing a selling price of 17s. 9d. net, but they were usually for single volumes and more in the way of retail sales." It also appears from this exhibit that the Government agent interviewed Lionel Laurance (a witness for the importer) for the purpose of securing information as to the wholesale market value of the merchandise in question. The Government agent reports as follows:

The department is advised that I made an investigation of this shipment at the office of the shipper, where Mr. Lionel Laurance was interviewed. As a result of the interview I found that the book in question was originally sold to the Globe Optical Company, of Boston, at a price of $2 each, less 2½%. The Globe Optical Company made a contract before the book was printed to take 3,000 copies in lots of 500 each. Before the full number had been delivered the Globe Optical Company was consolidated with the American Optical Company, which was offered the books at the same price of $2, provided they would take delivery in lots of 500 each. The company would not take delivery in such quantities, and they were charged, therefore, $2.75. This price includes packing charges and delivery charges to the shipping agents in London.

In order to establish home-market prices, I examined the journal account of Mr. Laurance for a period covering the past six months. The journal entries show that the usual wholesale quantity sold in the home market is 6 copies, and that the selling price is 15s. 9d. net. There were no entries showing a lower selling price for home consumption. A few entries were found showing a selling price of 17s. 9d. net, but they were usually for single volumes and more in the way of retail sales. In the home trade postage is prepaid on shipments.

Mr. Laurance stated that the reason for giving the lower price to the United States was because of the quantities taken. He said that while 15s. 9d. was the open-market price in England, he would be willing to sell at the same price charged the American firm if he could get orders for similar amounts. In the

journal I found entries showing sales to Canada at 21s. less 33⅓%. No sales have been made at this price, however, in the home market.

As Mr. Laurance sells only two books, he has not issued a catalogue or price list.

On this record Associate Justice Fischer, sitting in reappraisement, held that the value returned by the appraiser, 15s. 9d., was the foreign and dutiable value of the merchandise, and judgment was entered accordingly.

An application for a review of the judgment of the associate justice was filed in the court below by the importer.

The United States Customs Court in an opinion by McClelland, Associate Justice, said:

The evidence taken below shows that the only sale price in England, so far as disclosed, is the price fixed by the appraiser and affirmed by Justice Fischer, and this finding was based upon evidence of a few sales, no one of which included more than six copies. Nothing in the record indicates whether there is both a wholesale and a retail market in England for these books, but we are satisfied that six copies of such books is not a wholesale quantity and that the price charged per copy in such a transaction does not constitute foreign market value as defined in paragraph (b) of section 402 of the tariff act of 1922.

The importations involved are the only exportations of wholesale quantities to which our attention has been invited, and the prices paid must be accepted as the export values on the respective dates of shipment.

The findings of value made below are manifestly against the weight of evidence and they are therefore reversed. The invoice values should have been and are sustained.

In accordance with this decision, a judgment was entered reversing the judgment of Associate Justice Fischer.

From this judgment the Government has appealed to this court.

The Government contends: That it has been conclusively established by the evidence introduced by the Government and by the appellant that the usual wholesale quantities in which the books were sold in England were from 6 to 12; that the wholesale market value thereof in such quantities was 15s. 9d.; that the books were never sold in England for home consumption in larger quantities than 12; and that the prices paid by the appellant were unusual and less than the foreign value because of the unusually large quantities purchased by it. It is contended that the judgment of the reviewing court is not supported by any substantial evidence and is contrary to the evidence.

It is claimed by appellant: That there is no evidence in the record to show that the books were sold in wholesale quantities in England for consumption there; that the values returned by the appraiser and sustained by the associate justice, sitting in reappraisement, corresponded to the retail prices of the merchandise; and that, as there is no evidence of foreign value, and as the entered values represent the export values, the judgment of the United States Customs Court

is in conformity to the evidence in the case, and should, therefore, be affirmed.

There is no substantial conflict in the evidence. There are, however, widely divergent opinions as to the construction to be placed thereon. We find but little difficulty in reaching the conclusion that the evidence fully supports the values returned by the appraiser and the findings and judgment of the associate justice sitting in reappraisement; and that the judgment of the United States Customs Court is not supported by any substantial evidence.

Mr. Laurance, a director of the company from which the merchandise was purchased by appellant, stated frankly and positively that the prices at which the books were sold to appellant were less than the market values in England because of the unusually large number purchased by appellant. He said:

(8) Seeing that there are no individual English buyers for large quantities of these books, there is not and can not be any domestic price equivalent to that at which the books are supplied to the American Optical Company.

(9) Individual sales to individual houses in England are only in small quantities, such quantity not exceeding as a rule, twelve (12) copies, and very often only half a dozen copies at a time; that in selling in such quantities the price is 15/9.

The precise issue to be determined by the associate justice was the dutiable value of the merchandise. This issue involved the wholesale market value of the merchandise in the country of exportation. The affidavit of Mr. Laurance was introduced by appellee. We must presume that it was introduced for the purpose of aiding the court to reach a correct conclusion upon the issues before it. Accordingly, it is fair to presume that, had Mr. Laurance intended to testify concerning retail quantities and prices therefor and that the books were not sold at wholesale, he would have said so. We are of opinion, therefore, that the witness was discussing wholesale transactions, and that his testimony was open to no other construction. See *United States* v. *Kaufman & Co.*, 14 Ct. Cust. Appls. 264, T. D. 41881.

Furthermore, the report of the agent of the Government is consistent with the testimony of the witness Laurance. It appears therefrom that the invoice prices were agreed upon because of the large quantity of books purchased by appellant; that the books were usually sold in England in wholesale quantities of from 6 to 12 at 15s. 9d.; and that the retail price for one or more copies was 17s. 9d.

We are unable to find any substantial evidence to support the judgment of the court below. It must, therefore, be reversed. *Ziade* v. *United States*, 14 Ct. Cust. Appls. 47, T. D. 41551 and cases cited therein.

The judgment is reversed and the cause remanded for proceedings consistent with the views herein expressed.

*Reversed* and *remanded.*