WILLIAM J. OBERLE, INC. (VALLE & SUERO) v. UNITED STATES

UNITED STATES v. WILLIAM J. OBERLE, INC. (VALLE & SUERO)

**No. 5042.**—Entered at New Orleans, La., April 16, 5, 9, March 26, 1938.
Entry Nos. 3384, 3310, 3335, 3203.

First Division, Appellate Term

(Decided October 31, 1940)

*Daniel P. McDonald* for the importer.

*Webster J. Oliver*, Assistant Attorney General (*William J. Vitale*, special attorney), for the United States.

Before BROWN, KINCHELOE, and KEEFE, Judges

KINCHELOE, Judge: This is an application for review of a decision rendered by a single Judge involving the proper dutiable value of certain importations of okra from Havana, Cuba.

At the trial below these cases were consolidated for hearing, by consent of the parties, and the decision of the trial judge (Reap. Dec. 4652) embraced all of the four appeals to reappraisement now before us. It is true that the decision of the lower court was divided in that the appraised values were affirmed as to the merchandise covered by reappraisements 125890–A and 125891–A, and values higher than the appraised values were found as to the merchandise covered by the other two cases before us, to wit, reappraisements 125888–A and 125889–A. However, the issue involved in all of the cases is the same, and the evidence adduced by the parties is equally applicable, in our judgment, to all of them.

When these cases were argued before the Division, motion was made by counsel for the importer to consolidate them for the purposes of decision and upon objection by counsel for the Government, the motion was denied. However, upon a careful consideration of this entire record we are of the opinion, and therefore so hold, that the ruling of the division on said motion was error, and therefore said motion of counsel for the importer is hereby granted and the cases are accordingly consolidated for the purposes of decision. Exception to this ruling is hereby given the attorney for the Government. Hence, this application for review is before us as a cross appeal; counsel for the importer having appealed from the judgment of the lower court so far as it found values higher than the entered values, and counsel for the Government having appealed from said judgment so far as it affirmed appraised values.

In the court below the appeals to reappraisement under consideration came before the trial judge as collector's appeals, all of the merchandise having been appraised at the entered values. The evidence introduced by the respective parties is entirely documentary. The Government introduced in evidence a special agent's report which was admitted as exhibit 2. Six affidavits were offered on behalf of the importer, and they were received in evidence as collective exhibit 1.

All of the affiants who executed the affidavits included in said collective exhibit 1 are identified in the special agent's report, said exhibit 2, as forwarding agents doing business in Havana, Cuba, handling all kinds of vegetables, including okra.

Said report, exhibit 2, states that there are two varieties of okra grown in Cuba and shipped to the United States, to wit, a so-called American type and a so-called Cuban type. It has been conceded herein that the merchandise involved in the reappraisements under consideration is the Cuban type okra. The report, said exhibit 2, distinguishes the two said varieties in appearance, the method of shipment, and in price. The American type okra is long; the Cuban type is short. The American type is shipped in crates containing six baskets weighing 4¼ to 4½ pounds, while the Cuban type is shipped in hampers containing approximately 37 pounds. And in price, the American type is invariably higher than the Cuban type. It is further stated in said report that both of said varieties are carefully sorted and selected; that there is no foreign market for the varieties shipped to the United States; that the okra "sold for home consumption is usually field run or culled from that shipped to the United States" and sold at a lower price in various kinds of containers and without any attempt at careful packing. Said report further discloses that a large amount of the okra shipped from Cuba is on consignment, but there is set forth therein lists of sales of both of said varieties to various importers located in Tampa, Fla., covering a period of approximately 3 months which embraces the time covered by the shipments in question.

The affidavits, said collective exhibit 1, offered by the importer were executed by the shippers of the instant merchandise, all of whom testified that they are brokers dealing in all kinds of vegetables, including okra, in Havana, Cuba; and that all of the merchandise in question was shipped on consignment. Concerning market conditions with respect to Cuban okra in the Havana market, each of said affiants testified that the market was a highly competitive one; that said commodity was sold at whatever price the seller could obtain; that the selling prices would vary as much as 300 percent in one day; and that Cuban okra was never sold in any definite quantity or at any uniform price during the period covered by the shipments in question.

The greatest value that can be attached to that testimony of said affiants is that it reflects an unstable market in Havana so far as the brokers or forwarding agents, who offered such testimony, are concerned. In our opinion, however, such testimony of importer's witnesses is not sufficient to contradict the evidence contained in the special agent's report, which, in our judgment, shows the existence of an export value for the Cuban style okra in question, at the time of exportation thereof, as found by the lower court.

The contention of counsel for the importer that there is nothing to show that the merchandise referred to in the special agent's report

is the same as or similar to the merchandise in question is, in our judgment, wholly without foundation. In his brief, said counsel states such contention thusly: "The Special Agent's report herein fails to show entirely whether the Okra shipped to Tampa, Florida, was of first, second, or third quality." But there is nothing in the proof introduced herein to indicate that there are different qualities or grades of Cuban type okra, the instant merchandise. The merchandise in question is invoiced as "okra," without any qualifying words or numbers which might suggest a particular quality or grade, and while such a fact is by no means conclusive it would have some significance, in our judgment, in connection with the point raised by said counsel. The distinctions recognized in the Cuban market are clearly set forth in the report of the special agent, as hereinabove stated. After a careful study of all of the official papers, together with the documentary evidence, before us, we are satisfied that the Cuban type okra referred to by the special agent in his report, exhibit 2, is the same as or similar to the merchandise covered by the shipments under consideration.

While we are satisfied that the evidence adduced herein is sufficient to warrant the finding that export value, as such value is defined in section 402 (d) of the Tariff Act of 1930, is the proper basis for appraisement of the instant merchandise, as held by the lower court, yet we are not in accord with all of the conclusions reached by the trial judge in determining such dutiable value. We have no dispute with the conclusion that Havana is the principal market in the country of exportation, but we do not agree with the finding of the court below that the usual wholesale quantity of the instant merchandise "ranges from 30 to 40 crates."

It is axiomatic in customs law that the usual wholesale quantity of a commodity is the wholesale quantity in which a major portion of the sales of such commodity is made. *United States* v. *Richard*, 15 Ct. Cust. Appls. 143, T. D. 42216; *Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *Minkus*, 21 C. C. P. A. 382, T. D. 46912; *Goldmark* v. *United States*, 22 C. C. P. A. 358, T. D. 47378. Thirty-six sales of Cuban style okra to various importers in Tampa, Fla., from Havana, are set forth in the special agent's report, said exhibit 2. In the absence of proof to the contrary, said sales are to be regarded as unrestricted sales in wholesale quantities, made in the ordinary course of trade. *United States* v. *Andrews*, 15 Ct. Cust. Appls. 126, T. D. 42193.

Analyzing said thirty-six sales, we find that the quantity in which the greatest number of sales were made is forty hampers, and following the principle enunciated in the above-cited authorities on the matter of usual wholesale quantity for duty purposes, we hold said

quantity to be the usual wholesale quantity for the purposes of determining dutiable export value of the instant merchandise. The prices at which said usual quantity was sold, as disclosed by the said list of thirty-six sales, range from 85¢ a hamper to $1.40 a hamper. Within the judicial interpretation of the statutory phrase, "to all purchasers," as set forth in the case of *United States* v. *Mexican Products Co.*, 28 C. C. P. A. — (C. A. D. 129) and the cases therein cited, the freely offered price of the merchandise in question for exportation to the United States to all purchasers in said usual wholesale quantity is $1.40 per hamper, packed, and we so hold.

We therefore find the following facts:

(1) That the merchandise in question consists of certain okra, Cuban style, imported from Havana, Cuba, and entered at the port of New Orleans.

(2) That there was no foreign value, as such value is defined in section 402 (c) of the Tariff Act of 1930, for the merchandise in question.

(3) That the proper basis for appraisement of the instant merchandise is export value as such value is defined in section 402 (d) of said tariff act.

(4) That the principal market in the country of exportation of said merchandise is Havana.

(5) That the usual wholesale quantity, within the judicial interpretation of such term for the purposes of finding dutiable export value, of said merchandise is forty hampers.

(6) That the price at which said merchandise was freely sold at the time of exportation thereof for export to the United States to all purchasers in the principal market of Havana, Cuba, in said usual wholesale quantity is $1.40 per hamper, packed.

We therefore hold as matter of law that the correct dutiable export value of the merchandise covered by the four appeals to reappraisement under consideration is that set forth in fact (6), and that the judgment of the court below is modified accordingly.

Judgment will be rendered accordingly.