Downing & Co. et al. *v.* United States (No. 2886)[1]

United States Court of Customs Appeals, June 6, 1927

*Frank P. Wilson* (*Bert Hanson* of counsel) for appellants.
*Charles D. Lawrence*, Assistant Attorney General (*Oscar Igstaedter* and *John F. Kavanagh*, special attorneys, of counsel), for the United States.
*Lamb & Lerch* (*George F. Lamb* of counsel) *amici curiae.*

[Oral argument May 27, 1927, by Mr. Hanson, Mr. Igstaedter, and Mr. Lerch]

Before Graham, Presiding Judge, and Smith, Barber, Bland, and Hatfield, Associate Judges

Bland, Judge, delivered the opinion of the court:

This appeal involves our review of the action of the Third Division of the United States Customs Court in two reappraisement cases, which, by a divided court, affirmed the decisions of the single general appraiser.

The importations in controversy consisted of two entries of colored cotton crêpe of a grade and quality known as *matsu* (Pine) brand exported from Japan and imported at the port of Boston. The two importations were consolidated and tried together.

[1] T. D. 42243.

T. D. Downing & Co. entered one of the importations at "yen 9.25 per piece, plus charges shown on the invoice." The appraiser advanced the merchandise by adding a so-called consumption tax. His appraisal reads as follows:

Yen per piece, 9.25, plus 7 per cent Jap. home consumption tax. Add cases, packing, etc.

In the second case the French American Import Co. claimed to have made a duress entry; that is, entered under the provisions in the latter part of section 489, Tariff Act of 1922, in order to meet the advance made by the appraiser in the Downing case.

In the latter entry the importer claims to have added to his entered value a sum equal to the Japanese tax, which had been added by the appraiser in the Downing case.

The appraiser, in appraising the goods in the second importation, used the following language:

Yen per piece 10.20. Add 46 sen per piece (tax). Add packing.

The importers appealed for reappraisement and both cases were tried together, where both sides were in agreement that the appraiser had added a Japanese tax. The case was tried out before the single general appraiser and before the Third Division of the United States Customs Court as a tax case, and the issue seems to be, although considerably confused, as to whether or not the appraiser properly added a certain Japanese tax. This tax is referred to as a "consumption tax," as a "textile tax," and a "Jap. tax." A 7 per centum tax, a 10 per centum tax, and 46 *sen* per piece as a tax are mentioned in the testimony and on the official papers.

The single general appraiser, now Associate Justice McClelland, tried the consolidated cases and rendered the following decision:

These are appeals to reappraisement against findings of the United States appraiser at the port of Boston on cotton crêpe imported from Japan. The record discloses that the appeals are against the appraiser's addition to the unit value of a Japanese consumption tax. In appeal 12770–A the addition is in the form of 7 per cent; in appeal 40851–A the addition is 46 sen per piece.

The contention of the appellants, as expressed by their counsel, is that there is no wholesale market for home consumption of this particular kind or grade of cotton crêpe in Japan, but that there is an established export value to the United States therefor, and that inasmuch as there is no home consumption market in Japan for this crêpe there can not be, and there is therefore no home consumption tax, and consequently no addition should have been made therefor to these importations.

I find from the evidence the following facts:

1. That there is a home consumption wholesale market value of cotton crêpe similar and comparable with the merchandise here involved in Japan and that such crêpe when sold in usual wholesale quantities in Japan is subject to a home consumption tax equal to that added in each case by the appraiser.

2. That the appellants have failed to establish by evidence that the values found by the appraiser exceeded the wholesale market values in Japan for like merchandise when sold in usual wholesale quantities for home consumption.

3. That the appellants have not met the burden that rested upon them to overcome by competent evidence the presumption of the correctness to which the findings of the appraiser are entitled.

I therefore sustain the appraised value in each case.

Importers appealed to the Board of General Appraisers for a review of the decision of the general appraiser, under section 501 of the Tariff Act of 1922, which reads as follows:

SEC. 501. REAPPRAISEMENT.—The decision of the appraiser shall be final and conclusive upon all parties unless a written appeal for a reappraisement is filed with or mailed to the Board of General Appraisers by the collector within sixty days after the date of the appraiser's report, or filed by the consignee, or his agent, with the collector within ten days after the date of personal delivery, or, if mailed, the date of mailing of written notice of appraisement to the consignee, his agent, or his attorney. No such appeal filed by the consignee, or his agent, shall be deemed valid unless he has complied with all the provisions of this Act relating to the entry and appraisement of such merchandise. Every such appeal shall be transmitted with the entry and the accompanying papers by the collector to the Board of General Appraisers and shall be assigned to one of the general appraisers, who shall ascertain and return the value of the merchandise and shall give reasonable notice to the importer and to the person designated to represent the Government in such proceedings of the time and place of the hearing, at which the parties and their attorneys shall have an opportunity to introduce evidence and to hear and cross-examine the witnesses of the other party and to inspect all samples and all papers admitted or offered as evidence. In finding such value affidavits of persons whose attendance can not reasonably be had, price lists, catalogues, reports or depositions of consuls, special agents, collectors, appraisers, assistant appraisers, examiners, and other officers of the Government may be considered. Copies of official documents, when certified by an official duly authorized by the Secretary of the Treasury, may be admitted in evidence with the same force and effect as original documents.

The decision of the general appraiser, after argument on the part of the interested parties if requested by them or by either of them, shall be final and conclusive upon all parties unless within ten days from the date of the filing of the decision with the collector an application for its review shall be filed with or mailed to said board by the collector or other person authorized by the Secretary of the Treasury, and a copy of such application mailed to the consignee, or his agent or attorney, or filed by the consignee, or his agent or attorney, with the collector, by whom the same shall be forthwith forwarded to the Board of General Appraisers. Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor. The decision of the Board of General Appraisers shall be final and conclusive upon all parties unless an appeal shall be taken by either party to the Court of Customs Appeals upon a question or questions of law only within the time and in the manner provided by section 198 of an Act entitled "An Act to codify, revise, and amend the laws relating to the judiciary," approved March 3, 1911.

Board 3 of the Board of United States General Appraisers (United States Customs Court, Third Division, when the decision was written) by a divided court affirmed the action of the single general appraiser, from which decision Adamson, Justice, dissented. The majority decision and the dissenting opinion read as follows:

These cases are brought before the court on an appeal from the reappraisement made by the associate justice below. The commodity is colored cotton crêpe known as matsu (Pine) brand, exported from Japan. The single question involved is as to whether a certain tax should be added to the purchase price in Japan in order to make the dutiable value. That raises also the question of the home market in Japan for this class of goods.

The record is quite voluminous. Very able briefs have been filed on both sides. We think there is no question, however, but that similar and comparable merchandise is sold in the wholesale markets in Japan as found by the court below. There seems to be some confusion with reference to the tax which is added. In one case it is a certain amount of money and in the other a percentage. No issue was made, practically, upon this at the hearing and there is nothing to show the fallacy of the proceeding in adding the different amounts for taxes. We think it is clear that the home market price is higher than the export price and therefore conclude that there is at least substantial ground found in the evidence for the finding of the associate justice below. His decision is therefore affirmed.

DISSENTING OPINION

ADAMSON, Justice: I regret my inability to concur with my associates, but I have considered the case on the record made before the single associate justice and I am absolutely unable to reach the conclusions reported by the associate justice who presided below and affirmed by the majority of this court.

The first finding of the associate justice who tried the case I think entirely unsupported by the evidence, but on the other hand contradicted by the evidence conclusively. There is no wholesale market value for domestic consumption for the merchandise at bar in Japan. Therefore, it was not proper to add the home-consumption tax, even if such had been proven to be required by the law of Japan. I find no evidence of a law imposing such tax in the record. The existence of the tax can not be assumed, but must be proven in a legal way. There is a legal way to prove any foreign law, and lawyers have been practicing before this court on questions involving that subject long enough to have secured that evidence in the proper way and submitted it to this court. In the absence of such legal proof I can not concur in any judgment that there was such a tax.

The second finding of the associate justice that the appellants had failed to establish that the values found by the appraiser exceeded the wholesale market value in Japan I consider hardly pertinent to the issues in the case. When it was established that there was no such wholesale market it was not necessary to offer further evidence to negative the proposition. The export value having been established, in the absence of proof of a home market the importer was entitled to a decision in his favor.

As to the third finding of the associate justice, the hearing before him was a de novo investigation (Reapp. 35999, 36118), and it is well established that when the importer has proven his case on a de novo investigation there remains no presumption of correctness as to the finding of the local appraiser. I believe that the importer not only offered sufficient evidence to cast the burden upon the Government, but also that his evidence was overwhelmingly in favor of his contention. The question so often discussed between my associates and myself

as to the value to be given to statements of special agents appears again in this case. There is no doubt that Congress has authorized us to consider the reports of special agents as well as affidavits of people, the difference between that and other evidence being that the special agents and the affiants are not subject to cross-examination, but there is nothing in the language adopted by Congress either to compel or authorize us to give controlling probative value to statements of witnesses, not only entirely hearsay, but relating to transactions long past, and statements made by persons not parties to the record and having no present interest in the case. There is a peculiar thing in connection with the reports of the special agents in this case. The affidavit of an interpreter appears swearing to a conversation that occurred through his interpretation, between the special agent and the Japanese dealer. I am wondering why it did not occur to Government authorities, special agent and lawyer, to have that affidavit administered to the dealer instead of to the interpreter. There would have been no doubt about the regularity of that evidence under the act of Congress if the dealer had been the affiant instead of the interpreter.

I do not believe that such statements under the facts in this case and the overwhelming evidence of positive witnesses should carry conviction to our minds, nor to the mind of the associate justice over all the testimony of the importer, nor do I believe that giving legal weight to all those statements as well as to the positive testimony of the importer, that there is any substantial evidence, either to contradict the case made by the importer, as to the home value, or to prove the existence of any tax. The decision of the associate justice should be reversed.

At the outset we desire to call attention to the following language used in said section 501:

* * * Every such application shall be assigned by the Board of General Appraisers to a board of three general appraisers, who shall consider the case upon the samples of the merchandise, if there be any, and the record made before the general appraiser, and, after argument on the part of the parties if requested by them or either of them, shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings, *and shall state its action in a written decision, to be forwarded to the collector, setting forth the facts upon which the finding is based and the reasons therefor.* (Italics ours.)

The duties and limitations of the single general appraiser and of the Board of General Appraisers in reappraisement and re-reappraisement proceedings were carefully considered by this court in *Johnson Co.* v. *United States*, 13 Ct. Cust. Appls. 373. It was there pointed out that the trial before the single general appraiser, sitting in reappraisement, was a trial *de novo* and that when said cause was before the Board of General Appraisers for review it was appellate. The statute requires that this appellate tribunal shall "consider the case upon the samples of the merchandise * * * and the record made before the general appraiser and * * * shall affirm, reverse, or modify the decision of the general appraiser or remand the case to the general appraiser for further proceedings * * * setting forth the facts upon which the finding is based and the reasons therefor." The statute requires that the Board of General Appraisers shall "set forth the facts." We find nothing

in the statute requiring the general appraiser to find a single fact, except that of value. A fact-finding tribunal manifestly must weigh the evidence if it is to properly find the facts. If the weight of the evidence is with the finding of the single general appraiser upon that issue, his decision should be affirmed. If, on the contrary, his decision was against the weight of the evidence, it should not be affirmed.

We think that the United States Customs Court, Division 3, has misconstrued the statute as applicable to its reviewing duties. In its majority opinion we find the following:

There seems to be some confusion with reference to the tax which is added. In one case it is a certain amount of money and in the other a percentage. No issue was made, practically, upon this at the hearing, and there is nothing to show the fallacy of the proceeding in adding the different amounts for taxes. We think it is clear that the home market price is higher than the export price, and *therefore conclude that there is at least substantial ground found in the evidence for the finding of the associate justice below.* His decision is therefore affirmed. (Italics ours.)

From the language used we conclude that in reviewing the decision of the general appraiser the court below felt that it was compelled by the law to affirm the decision of the single general appraiser *if any substantial evidence was found in the record to support his decision.* It should not have affirmed his decision unless the weight of the evidence was with it. It therefore should have weighed the evidence, which it manifestly did not do. If it did not weigh the evidence, the importers have not had their rights under the statute, since a weighing of the evidence might have brought the court to a different conclusion. Instead of finding that there was "at least substantial ground found in the evidence for the finding of the associate justice below," who found certain facts, the court's duty was to determine whether or not the weight of the evidence, from the record as a whole, was with the finding of the general appraiser.

Since the statute expressly provides for a "setting forth" of the facts by the board, we think it ought to clearly set out the necessary and ultimate facts upon which its decision rests. See *Kuttroff, Pickhardt & Co.* v. *United States*, 13 Ct. Cust. Appls. 17; *Kuttroff, Pickhardt & Co.* v. *United States*, 12 Ct. Cust. Appls. 261; *Sandoz Chemical Works* v. *United States*, 12 Ct. Cust. Appls. 512. A finding of facts is a written statement of each issuable fact established by the evidence 25 C. J. 1133, citing *Elder* v. *Frevert*, 18 Nev. 278, 3 P 237.

If this court is to indulge in interpretation and construction of the language used by the court below, it is probable that some of the ultimate facts may be said to have been found by it. We are not disposed here to point out all the facts necessary to support its

decision, but for the purposes of this case and the issues herein, we think the following facts are essential:

1. The appraised unit value. The single general appraiser, by virtue of the statute and customs regulations, is required to return the unit value of the merchandise. *Igstaedter & Co.* v. *United States*, 11 Ct. Cust. Appls. 477 and cases cited. The unit value, we think, is an issuable fact. We know of no warrant in law for such action on the part of the single general appraiser as was taken in this case, where he stated: "I therefore sustain the appraised value in each case." In this particular case the manner of ascertaining the appraised value by the local appraiser has been attacked in this court. We do not regard it as essential to pass upon its validity, since it has been appealed from and since the return of the single general appraiser, presumably found in a *de novo* proceeding, is also under question. It is not for the single general appraiser to *affirm* or *sustain*, but to *return value*, and we think it is a good time to again suggest to the court below that if forms prepared in advance are to be used in connection with its proceedings, they should be prepared with care to meet the requirements of the tariff act under consideration. And just here let us suggest that the reappraisement decision of the single general appraiser in this case, in our judgment, is not in conformity with the law. It reads as follows:

This appeal from the finding of the United States appraiser at the port of Boston having come on to be heard, after due notice having been given to the parties in interest of the time and place of hearing.

I find, after having proceeded according to the law governing such appeals, upon the evidence and the fact disclosed by the record made before me, that the *actual dutiable value or wholesale price of the merchandise* at the time of exportation in the principal markets of the country from whence exported was as follows:

| Case numbers | Description of merchandise | Currency | |
|---|---|---|---|
| | | Per — | Total value |
| | Appraised value affirmed_____ | | |

And I do hereby find the dutiable value of such merchandise accordingly.

The single general appraiser is authorized to find no other value than that set out in section 402. He is to return the foreign value or the export value, whichever is the higher. We assume he attempted to find foreign value.

The foreign value is defined as follows:

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States at which such or similar merchandise is freely offered for sale to all purchasers in

the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States.

By no stretch of the imagination can we conclude that the single general appraiser in the above finding found the value set out and defined in (b) of section 402, *supra.* He stated that he found "the actual dutiable value or wholesale price of the merchandise." If he sought to find the value defined in (b), he should have found "the market value or the price at the time of exportation of such merchandise to the United States at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatsoever nature and all other costs, charges, and expenses incident to placing the merchandise in condition packed ready for shipment to the United States." A finding of the *wholesale price* of the merchandise is not a finding as to whether it was the *wholesale price under* (*b*) or a *wholesale price under* (*c*), the latter being for exportation.

2. It should have made a finding as to the existence or nonexistence of a foreign value and an export value, and which value it adopted, and the reasons therefor. *United States* v. *Cabrera Bros.*, 13 Ct. Cust. Appls. 82. In order to determine which was the higher, if both existed, both values should have been found, in express terms, and in the currency of Japan, and in like manner the cost of the containers and coverings, if any, and all other costs and charges.

It would seem to us that in this particular case it is quite important to know whether the single general appraiser found the export value as defined in (c) or the foreign value as defined in (b), since it is contended by the importers that the appraiser added the Japanese tax to the export value, which they contend is illegal, and cite *International Sales Co. et al.* v. *United States*, 12 Ct. Cust. Appls. 506.

3. It should have found as to the existence of a Japanese consumption tax, the amount of same, and its application to the importations under consideration.

4. It should have found the cost of containers, coverings, packing, etc. Section 503 provides that the ad valorem rate shall be taken upon the value returned by the appraising officers. The collector has nothing to do with ascertaining the value. *United States* v. *Mills & Gibb Corporation*, 13 Ct. Cust. Appls. 137.

It seems to us, from an examination of the record, from the language used by the Customs Court and the single general appraiser,

and from the arguments of counsel, that the issues in this case are chiefly, if not wholly, concerned with the question of the legality of adding a Japanese consumption tax to some kind of value found by the appraising officers. To illustrate how important it is that definite and specific facts should be found by the court below, we call attention to the fact that one of counsel, appearing in this court, in this case, defending the position of the Government, argued, with no little plausibility, that the judgment of the court below should be sustained for the reason that, without regard to any consumption tax question, the appraising officers and the court below had found a foreign value in accordance with subdivision (b) of section 402, and that the record supported such finding, whether or not we look to it to ascertain if it proved the existence of a tax or a nonexistence of the same. How can this court examine a record to see if there is any substantial evidence to support the finding below if we can not determine what the finding is or the reasons therefor? When Congress used the words "and the reasons therefor" in section 501, *supra*, we think it had in mind the obviation of difficulties such as confront us and the litigants in this case at this time.

We are not unmindful of the fact that the great volume of important litigation which must be considered by the court below necessarily handicaps it in giving the careful and detailed consideration to the many statutory duties imposed upon it, which it no doubt would desire for a more satisfactory result, especially in reappraisement cases. The far-reaching importance of the decision in this case has been pointed out to us, and it has been suggested that an early decision on the merits of the case is especially desirable, on account of the very large number of pending cases, action upon which is suspended until after this case is decided. Our conclusions reached in this case are reached after much deliberation and with the view of being helpful to the court below and to the customs administrative officers in properly discharging their respective duties. We are hopeful that the suggestions herein offered will be conducive to quicker and better results in similar pending and future litigation.

For the reasons and purposes herein assigned and indicated the judgment of the United States Customs Court is reversed and the cause remanded, with instructions to it to state its finding together with the facts upon which such finding is based, and the reasons therefor, in accordance with the statute and consistent with the views thereof, as expressed herein.

*Reversed* and *remanded.*