The judgment of the United States Customs Court is *reversed.*

BLAND, J., dissents.

UNITED STATES *v.* WIENER (No. 2948)[1]

United States Court of Customs Appeals, February 9, 1928

*Charles D. Lawrence,* Assistant Attorney General (*Fred J. Carter,* special attorney, of counsel), for the United States.

*Allan R. Brown* for appellee.

[Oral argument October 13, 1927, by Mr. Carter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in reappraisements Nos. 50148–A, 50216–A, 50281–A, 50282–A, 50283–A, 50443–A, 50536–A, 50537–A, 51154–A, 51686–A, 52538–A, 52539–A, 52540–A, 52541–A, 52542–A, 52543–A, 52600–A, 54056–A, and 54312–A.

[1] T.. D. 42594.

Merchandise, consisting of "erect pile chiffon velvets" woven on double-shuttle looms, made in Germany for, and sold exclusively to, the appellee, an American corporation, neither sold nor offered for sale in the markets of Germany either for consumption there or for export to the United States, is claimed by the appellee to be dutiable at its United States value, as defined by subsection (d) of section 402 of the Tariff Act of 1922.

The Government claims that it is dutiable at the foreign value of *similar* merchandise sold in the markets of Germany in accordance with subsection (b) of section 402.

The pertinent parts of section 402 read as follows:

SEC. 402. VALUE.—(a) For the purposes of this act the value of imported merchandise shall be—

(1) The foreign value or the export value, whichever is higher;

(2) If neither the foreign value nor the export value can be ascertained to the satisfaction of the appraising officers, then the United States value;

\* \* \* \* \* \* \*

(b) The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual whole-sale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

\* \* \* \* \* \* \*

(d) The United States value of imported merchandise shall be the price at which such or similar imported merchandise is freely offered for sale, packed ready for delivery, in the principal market of the United States to all purchasers, at the time of exportation of the imported merchandise, in the usual wholesale quantities and in the ordinary course of trade, with allowance made for duty, cost of transportation and insurance, and other necessary expenses from the place of shipment to the place of delivery, a commission not exceeding 6 per centum, if any has been paid or contracted to be paid on goods secured otherwise than by purchase, or profits not to exceed 8 per centum and a reasonable allowance for general expenses, not to exceed 8 per centum on purchased goods.

On the trial before an associate justice of the Customs Court, sitting in reappraisement, the importer offered in evidence a sample of the merchandise, which is referred to in the record as "quality number 8932." It was established that this quality of velvet was made exclusively for the importer for export to the United States, and was not sold or offered for sale to others in the markets of Germany, either for consumption there or for export to the United States.

The importer then introduced in evidence Exhibit 1, an affidavit of one Walter Peltzer, a director of the German corporation which manufactured the velvets in question, for the purpose of establishing that there was no merchandise sold or offered for sale in the markets of Germany similar to that involved in this case. In view of the

importance of the matters contained therein, we think it advisable to quote the exhibit.

Walter Peltzer, being first duly sworn, deposes and says:

That he is director of Peltzer Gebr. Aktiengesellschaft, a corporation operating as such under the laws of the Republic of Germany, and has been such for 15 years; that he is personally familiar with all the facts hereinafter set forth by reason of his duties as director of said corporation; that the said corporation made and sold to Wm. E. Wiener, Inc., of the city of New York, 39/40 inch all-silk erect pile velvet, quality 8932, in both colors and in black, covered by various invoices dated Crefeld, Germany, and embracing cases Nos. 1 to 40, inclusive; that the said quality 8932 above referred to has not been sold or offered for sale to any prospective buyer either for home consumption in Germany or for export to the United States, either in the said width of 39/40 inch or in any other width, but that said quality was and is made especially and solely for Wm. E. Wiener, Inc., of New York City; that the said quality 8932, 39/40 inch width, covered by the shipments above referred to, was in fact sold to Wm. E. Wiener, Inc., at the price of $2.45 per yard, net, c. i. f. New York, equivalent to the price of $2.68 per meter, at which the said merchandise was invoiced upon the consular invoices.

Deponent further states that by reason of his activities as director of said corporation deponent is in direct touch with the markets in all-silk erect pile velvets and that such velvets are not offered in the markets of Germany and that to the best of deponent's knowledge and belief there is not sold or freely offered for sale, either for home consumption in Germany or for export to the United States, a quality of velvet comparable to No. 8932 by other manufacturers in Germany.

WALTER PELTZER.

Sworn to before me this nineteenth day of January, 1926.

[SEAL.] LELAND B. MORRIS,
*Consul of the United States of America.*

The witness, Herbert Forsch, testified on cross-examination in answer to a question of Government counsel, as follows:

Q. Now, do you know of your own knowledge, of any sales of merchandise similar to the merchandise in question, in Germany?—A. Similar?

Q. Similar.—A. Of my own knowledge; no.

Exhibit 14, another affidavit by Mr. Peltzer, is in evidence. We quote:

The German customers prefer the ordinary chiffon velvet made on single-shuttle looms, which are not comparable with the erect pile velvets made on double-shuttle looms. Our system of weaving erect pile velvets on double-shuttle looms is less expensive than the system of our competitors, who are making the ordinary chiffon velvets on single-shuttle looms. On the double-shuttle looms we are saving 50% on weaving costs. By our method of weaving we are getting the real erect pile character of the goods, while other manufacturers, making the ordinary chiffon velvets, which are more expensive in weaving cost, try to imitate the erect pile character only by manipulation and finish. Therefore our qualities can not be compared with the ordinary chiffon velvets made by other manufacturers.

The evidence introduced by the Government consists of several reports of a Government agent, together with the testimony of

several witnesses. The purpose of the Government was to establish that merchandise similar to that imported was sold or freely offered for sale in the German markets, either for consumption there, or for export to the United States.

The record in this regard is confusing and difficult to understand. We have devoted considerable time to an effort to ascertain the facts developed or attempted to be developed by counsel who represented the Government on the trial before the associate justice. It would seem, from statements in its opinion, that the appellate division of the Customs Court had the same difficulty.

The Government introduced in evidence Exhibits 9, 11, and 12. Exhibit 12 represents the imported merchandise. Exhibit 9 represents a quality of chiffon velvet which the Government contended on the trial was similar to Exhibit 12. Exhibit 11 represents a different quality of chiffon velvet, which was also claimed by the Government to be similar to Exhibit 12. The velvets represented by Exhibits 9 and 11 were of different qualities and were sold at different prices. The trial justice held that the dutiable value per meter of the imported velvet was "gold marks 14.86, packing and tax included." This corresponded to the value returned by the appraiser. As the value of the velvet represented by Exhibit 11 was stated in the record to be marks 18.90 per meter, it is evident that the trial justice did not find that this velvet was similar to the imported. It would seem, therefore, although we can not be certain from the state of the record, that the appraiser and the trial justice returned their findings of value upon the basis of similarity of the velvets represented by Exhibits 9 and 12.

The importer appealed from the judgment entered upon this finding. The Government did not.

The appellate division of the Customs Court reversed the judgment of the trial justice. It held in an opinion by Sullivan, Justice (McClelland, Justice, dissenting), that the evidence in the record did not warrant a finding that either the velvet represented by Exhibit 9, or that represented by Exhibit 11, was similar to the imported merchandise; and that, as there was no foreign or export value of "such or similar merchandise" in the markets of the country of exportation, the imported velvet was dutiable at its United States value. One of the witnesses for the importer testified that the United States value, according to his computations, was $2.79 per yard—$3.05 per meter. The court below, as we understand its decision, held the merchandise dutiable at $2.68 per meter.

It is contended in this court by the Government that it has been established by the evidence that the velvets represented by Exhibits 11 and 12 are similar in material, quality, texture, and use; and that there is no substantial evidence in the record to the contrary unless

the statements contained in the affidavit of Mr. Peltzer, hereinbefore quoted, "can be said to be in conflict with the statements of the witnesses" for the Government. It is argued that such statements "should not have been held to overweigh the positive statements of the witnesses" for the Government, "especially in view of the fact that the affiant is not shown to have knowledge of all the qualities of velvet manufactured by the different firms in Germany"; and also because his statements were based on "knowledge and belief." It is further contended that, if this court should not uphold the claims of the Government in this regard, the judgment should nevertheless be modified, and the merchandise held to be dutiable at $3.12 per meter as its United States value. However, we need not be troubled by this claim, as counsel have entered into the following stipulation:

It is hereby stipulated by and between counsel that if the court be of opinion that the merchandise should be appraised at the United States value under section 402 (d), and not at the foreign value under section 402 (b), the United States value of the merchandise is $3.08 per meter.

Dated New York, N. Y.

October 25, 1927.

It is conceded by counsel for the Government that, if their contention be upheld as to the similarity of the velvets represented by Exhibits 11 and 12, the imported velvets should be held dutiable at the value found by the trial justice, rather than at the value (marks 18.40) of the merchandise represented by Exhibit 11, because, as the Government did not appeal from the judgment of the trial court, it is not entitled to a more favorable decision than that rendered by the trial court.

Other questions are discussed in the Government's brief, but we think it unnecessary, due to our views of the case, to discuss them. It was the duty of the appellate division of the Customs Court, in reviewing the judgment of the trial court, to weigh the evidence, and to render its decision in accordance with the weight thereof. Johnson Co. v. United States, 13 Ct. Cust. Appls. 373, T. D. 41318; Downing & Co. et al. v. United States, 15 Ct. Cust. Appls. 235, T. D. 42243. There is nothing in its decision to indicate that the court below did not weigh the evidence. On the contrary, it is evident that it did do so. This court, however, has no such authority in appeals in reappraisement cases. Ziade v. United States, 14 Ct. Cust. Appls. 47, T. D. 41551, and cases cited.

We think that there is but one question before us which requires decision: Is there any substantial evidence in the record to support the judgment of the court below?

The testimony of Water Peltzer was introduced in the form of an affidavit. He stated that, "by reason of his activities" for 15 years

"as director of said corporation (the manufacturer and exporter of the involved merchandise) deponent is *in direct touch with the markets in all-silk erect pile velvets and that such velvets are not offered in the markets of Germany and that to the best of deponent's knowledge and belief there is not sold or freely offered for sale, either for home consumption in Germany or for export to the United States, a quality of velvet comparable to No. 8932 by other manufacturers in Germany.*" (Italics not quoted.) He stated also that his company made the involved merchandise for, and sold it exclusively to, the appellee. This testimony was given by a man who had been a director of the exporting company for 15 years and who was in direct touch with the German market. Because of his interest and opportunity for observing and acquiring knowledge of the facts, he testified as one having such knowledge; and, while a portion of his testimony is "to the best of his knowledge and belief," the circumstances were such, probably, as to afford no more practical method of proving the facts in issue. Surely his testimony, since it meets the issues squarely, should be considered as having substantial probative force. The question of its weight was for the consideration of the court below. It accepted the testimony as having greater weight than that of witnesses who testified for the Government. We have no power to reverse the judgment based upon this finding, even if we were so disposed. We hold, therefore, that there is some substantial evidence to support the findings of the court below, and that the merchandise is dutiable at its United States value. The court having held, as we understand its decision, that the United States value of the imported merchandise was $2.68 per meter, and the parties having stipulated that its value was $3.08 per meter, the judgment will be modified to this extent.

Modified.