## WESTON ELECTRICAL INSTRUMENT CORPORATION v. UNITED STATES

No. 7773.—

Entry No. N–769.

(Decided January 17, 1950)

*Sharretts & Hillis* (*Howard C. Carter* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector*, special attorneys), for the defendant.

LAWRENCE, Judge: The question involved in this appeal for reappraisement is the proper dutiable value of certain selenium electric-photo cells which were imported from Germany and entered at the port of Newark, N. J. The merchandise was entered at RM 2.10 each, plus packing, apparently on the basis of foreign value, and it was appraised at RM 3.20 each, less 2 per centum cash discount, packing included, on the basis of foreign value, as that term is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

At the beginning of the trial of this appeal, counsel for the defendant made the following concession:

MR. AUSTER: I thought I conceded. I did concede that if your Honor was satisfied and is satisfied by the record, that there is a foreign value or there is an export value for such merchandise, I believe under the decisions, your Honor must find that the entered values are proper.

In view of the above statement by counsel for the defendant, which is in harmony with the authorities on the subject, I shall first consider the question of whether or not the record establishes a foreign or export value for such merchandise, since, if the record does establish a value for such merchandise, it will be unnecessary to consider the evidence in the record in regard to similar merchandise. In *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, our appellate court, in construing the language "such or similar merchandise" as used in section 402 (b) of the Tariff Act of 1922 (a provision analogous to section 402 (c), *supra*), stated:

* * * The law does not use the words "such" and "similar" synonymously, but with differing meanings, and alternatively. In our opinion, foreign value was to be ascertained, first, by "the market value, or the price * * * at which such," or the *identical* merchandise is offered for sale on the foreign markets, as provided by the statute, and, second, in the event that such merchandise is not so offered, then by "the market value or the price," at which *similar* merchandise is so offered. If the word "similar" means no more than the word "such," then there is no reason for it being used in the statute. To so construe it, is to lose sight entirely of the ordinary meaning of the word and to adopt a construction based upon the theory that Congress has employed useless and unnecessary language in drafting this act, which, under ordinary circumstances we may not do. *United States* v. *Post Fish Co.*, 13 Ct. Cust. Appls. 155, T. D. 41022. "Similar" merchandise must be construed as different from "such" merchandise in order to give this statute full effect. * * * [Italics quoted.]

See also *United States* v. *The American Bluefriesveem, Inc.*, 22 C. C. P. A. 67 (Customs), T. D. 47063; *Greenleaf* v. *Goodrich*, 101 U. S. 278; and *Schmeider* v. *Barney*, 113 U. S. 645.

As supporting the entered values of the merchandise covered by this appeal, counsel for the plaintiff offered and there was received and marked in evidence exhibit 1, an affidavit of the general manager of the exporter, who had been with that firm for 14 years, the statement contained in said affidavit being as follows:

That as General Manager and Custodian of said company, he is thoroughly familiar with the manufacture and sale of the Selenium Electric Photo Cells, T 10062 (45 mm ∅) which were manufactured by said company under his personal supervision as chief engineer of the company and were sold to the Weston Electric Instrument Co. between December 1938 and December 1939.

That he is personally familiar with the sale of precisely identical merchandise in Germany for consumption in Germany and for exportation to the United States during this period, and that he knows from personal experience the ordinary course of wholesale dealings, the principal markets of Germany for the sale of such merchandise, the number of sales and the quantity of precisely identical merchandise included in such sales, and the price at which such sales were made;

That the said Selenium Electric Photo Cells were at all times during this period freely offered for sale in the usual course of trade to all purchasers for consumption in Germany.

That the principal markets of Germany for the sale of such cells both for consumption in Germany and for export to the United States were Nuremberg and Erlangen;

That the vast majority of sales at wholesale both for consumption in Germany and for exportation to the United States were in quantities of 1,000 or more.

That the price at which said cells were freely offered for sale and were sold to all purchasers for consumption in Germany in the usual wholesale quantities in Nuremberg and Erlangen in the usual course of trade was RM 2.10 each, plus packing, and that there were no restrictions whatsoever upon the resale of said merchandise;

That the price at which said cells were freely offered for sale in the usual course of trade to all purchasers for exportation to the United States in the usual wholesale quantities in Nuremberg and Erlangen was RM 2.10 each, plus packing, or less.

Defendant's exhibit 3 is a treasury attaché's report, from which the following is quoted on the question of foreign value of this merchandise:

6. No Regular Inland Market:

While the manufacturer has had some demand in the German home market for finished photo cells of 32-mm and 40-mm diameter, there has been no demand as yet for the "S. A. F." 45-mm cell, No. T–10062–f. The latter has been considered a size suitable for use chiefly in foreign (U. S. and English) exposure meters, although Mr. Schumann claimed that in certain instances prices were quoted to domestic buyers as hereinafter mentioned.

7. Evidence Submitted:

Mr. Schumann showed me a copy of a typewritten price-list dated October 12, 1938, which he stated had been sent to the factory's domestic sales agents and which gave the following unit quotations for the product under consideration:

For quantities of   500 or more_____RM. 2.30 each, net
  "       "       " 1000 "    " _____2.10   "    "
  "       "       " several thousand units_____1.90   "    "

It will be noted that the date of this price list (which included quotations for smaller cells also, not sold to the Weston Corp.) was identical with that on which the Weston Corp. placed its original order for 10,000 45-mm cells, invoiced at the price of RM. 1.90 each, net.

Likewise, on the same date (October 12, 1938) the "S. A. F." made a written offer of the 45-mm cell to the firm Infram G. m. b. H., Leipzig, quoting a price of RM. 2.10 each, net, provided that at least several thousand units would be ordered. This purchaser had originally approached the manufacturer at an earlier date, requesting a price for the 45-mm cell in question and stating that he intended to export the cells to England. The "S. A. F." had previously made an offer quoting a price of RM 2.50 each, as noted from correspondence between the parties, but the customer had rejected this figure, stating that due to lower prices quoted by an American firm, he would only be interested if the "S. A. F." could give a lower price. The latter replied on October 12, 1938, offering the product, as mentioned above, at RM 2.10 each, net. No actual business had resulted to date, according to Mr. Schumann.

My informant was unable to submit any evidence of inland sales in 1938 or 1939 of the 45-mm photo cell, but stated that his firm was ready at all times to do

business in Germany at the prices quoted under the first paragraph of this sub-heading. He claimed, moreover, that a verbal offer of the instant cell, at a price of R.M. 2.10, net, had been made to the firm Metrawatt A. G., Nuernberg, some time during the latter part of 1938. Again no orders had been placed to date as a result of this particular offer.

The principal reason for the lack of orders covering the 45-mm cell, Mr. Schumann stated, was the fact that the "S. A. F." is engaged in patent litigation with another German manufacturer of photo cells, and consequently prospective buyers hesitate to place orders, fearing that they might become involved in the event that the "S. A. F." should be the loser in the lawsuit.

8.  Extent of Restriction on Use or Resale:

The "S. A. F." requires each purchaser of its photo cells to use the product exclusively in his own plant in connection with the manufacture of exposure meters. No resale is permitted and offers or sales are not made to dealers of any kind. If it is known that any purchaser intends to export "S. A. F." photo cells to the United States, the sale to such buyer will be rejected in view of the exclusive contract with the Weston Corporation. A similar condition exists with respect to other foreign countries wherein the manufacturer has appointed sole distributors for his products.

It will thus be seen from the quotations from exhibit 1 and exhibit 3 above that on the question of whether or not *such* merchandise as that here involved is freely offered for sale in accordance with section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), there is a sharp conflict in the evidence offered by plaintiff and that offered by defendant.

In my opinion the situation here presented is quite similar to that in the case of *United States* v. *Wiener*, 15 Ct. Cust. Appls. 428, T. D. 42594. In that case the plaintiff offered two affidavits of one Walter Peltzer, while "The evidence introduced by the Government consists of several reports of a Government agent, together with the testimony of several witnesses." An examination of the evidence thus offered by both parties in that case showed that it was in direct conflict, as is likewise the evidence in the instant case. Regarding the weight to be given to such evidence, our appellate court observed:

The testimony of Walter Peltzer was introduced in the form of an affidavit. He stated that, "by reason of his activities" for 15 years "as director of said corporation (the manufacturer and exporter of the involved merchandise) deponent is *in direct touch with the markets in all-silk erect pile velvets and that such velvets are not offered in the markets of Germany and that to the best of deponent's knowledge and belief there is not sold or freely offered for sale, either for home consumption in Germany or for export to the United States, a quality of velvet comparable to No. 8932 by other manufacturers in Germany.*" (Italics not quoted.) He stated also that his company made the involved merchandise for, and sold it exclusively to, the appellee. This testimony was given by a man who had been a director of the exporting company for 15 years and who was in direct touch with the German market. Because of his interest and opportunity for observing and acquiring knowledge of the facts, he testified as one having such knowledge; and, while a portion of his testimony is "to the best of his knowledge and belief," the circumstances were such, probably, as to afford no more practical method of

proving the facts in issue. Surely his testimony, since it meets the issues squarely, should be considered as having substantial probative force. The question of its weight was for the consideration of the court below. It accepted the testimony as having greater weight than that of witnesses who testified for the Government. We have no power to reverse the judgment based upon this finding, even if we were so disposed. * * *

Counsel for the plaintiff, in his brief filed herein, urges that—

There is no foundation shown for the statements relating to the extent of restrictions on use or resale appearing under item 8 of Defendant's Exhibit 3; these unsupported statements should be disregarded, but if they are entitled to any weight, they are clearly outweighed by the unqualified sworn statement contained in Plaintiff's Exhibit 1 to the effect that there are no restrictions whatsoever upon the resale of the merchandise.

Upon a full consideration of the conflicting evidence in this appeal for reappraisement, I am of opinion that the weight of the evidence clearly establishes that the imported merchandise had a home market value in Germany. On the question of export value for such merchandise, the record discloses that the sale for export of such selenium electric-photo cells was confined to certain selected and exclusive agents, and there is, therefore, no export value for such merchandise.

Consequently, I find as facts:

1. That the merchandise consisted of selenium electric-photo cells imported from Germany.

2. That said photo cells were freely offered for sale in the usual course of trade to all purchasers for home consumption in Germany.

3. That the principal markets in Germany for the sale of such cells were Nuremberg and Erlangen.

4. That the usual wholesale quantities in which said merchandise was sold were quantities of 1,000 or more photo cells.

5. That the sale for export of such selenium electric-photo cells was confined to certain selected and exclusive agents.

6. That the price at which such photo cells were freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, was RM 2.10 each, plus packing.

As matter of law, I hold—

1. That the proper dutiable value for the selenium electric-photo cells covered by this appeal for reappraisement is the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

2. That said foreign value is as set forth in finding of fact No. 6, *supra*.

3. That there is no export value for said merchandise.

Judgment will be entered accordingly.