UNITED STATES *v.* WESTON ELECTRICAL INSTRUMENT CORPORATION

No. 8096.—

Entry No. N–769.

Third Division, Appellate Term

(Decided March 5, 1952)

*Charles J. Wagner,* Acting Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.

*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges; CLINE, J., not participating

JOHNSON, Judge: This application for review of reappraisement involves certain selenium electric-photo cells imported from Germany. The question before the trial court was whether or not there was a value for home consumption of *such* merchandise in Germany. If a value for *such* merchandise could not be found, which is claimed by the importer to be represented by the entered value of RM 2.10 each, plus packing, the value for *similar* merchandise, the value returned by the appraiser of RM 3.20 each, less 2 per centum, packed, was contended by the Government to be the proper foreign value of the merchandise.

The trial court found that the weight of the evidence established that there was not an export value but that a home market value for *such* merchandise existed in Germany. The principal markets therefor were Nuremberg and Erlangen. The usual wholesale quantities were found to be 1,000 or more pieces. Therefore, the entered value was sustained.

The Assistant Attorney General in the application for review sets out 12 errors of the trial court as grounds for appeal. Therein, the

Government claims that the trial court erred in holding *such* photo cells were freely offered for sale; that the principal markets for *such* photo cells were Nuremberg and Erlangen; that the usual wholesale quantities were 1,000 or more; that the affiant in exhibit 1 was competent to testify; in giving weight to the exhibit such as to overcome the presumption of correctness attaching to the appraiser's action; in failing to find a restricted market for *such* photo cells in Germany; and, finally, in not finding and holding that the price of so-called *similar* photo cells, upon which the appraisement was based, which were freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade in Berlin, the principal market, represented the proper value of the imported merchandise.

The issue before this appellate division of the court is whether the importer established the existence of a foreign value for *such* merchandise, that is to say, the identical merchandise, in the home markets of Germany, and at what price *such* merchandise was freely offered for sale in usual wholesale quantities to *all* purchasers in the ordinary course of trade in that market. And, if the importer did not so establish, what was the correct value of the involved merchandise.

The Government contends that the record does not support or substantiate the finding of the trial court that there was a foreign value for *such* merchandise, urging that the affidavit, exhibit 1, unsupported by evidence of sales of *such* merchandise, should carry very little weight. It is the Government's contention further that the record does support a statutory foreign value for *"similar"* merchandise, as an article, item No. 781, was manufactured and sold in Germany by the Electrocell Gesellschaft of Berlin, Germany, and freely offered to all purchasers in the usual wholesale quantities at RM 3.20 each, the same being listed in a price list in effect since January 1, 1937.

The evidence introduced by the importer includes an affidavit of Heinrich Herrmann who, at the time the affidavit was executed, was general manager and custodian appointed by the United States Military Government of Süddeutsche Apparate-Fabrik G. m. b. H. It appears therein that he had been connected with that firm for 14 years and was thoroughly familiar with the manufacture and sale of the particular photo cells in question. The affiant stated that this class of cells, 45 mm., T-10062, was manufactured under his personal supervision as chief engineer of the company. The affiant further stated that he was personally familiar with the sale of "precisely identical merchandise in Germany for consumption in Germany and for exportation to the United States during this period" from Decem-

ber 1938 to December 1939, "and * * * knows from personal experience the ordinary course of wholesale dealings, the principal markets of Germany for the sale of such merchandise, the number of sales and the quantity of precisely identical merchandise included in such sales, and the price at which such sales were made." The affiant further stated that these particular cells were, during this entire period, freely offered for sale in the usual course of trade to all purchasers for consumption in Germany; the principal markets for the sale thereof, both for home consumption in Germany and for export, were Nuremberg and Erlangen; and that the "vast majority of sales at wholesale both for consumption in Germany and for exportation to the United States were in quantities of 1000 or more." The price at which these particular cells were freely offered for sale and sold to all purchasers for consumption in Germany in the usual wholesale quantities and in the ordinary course of trade was RM 2.10 each, plus packing, with no restriction whatsoever on resale thereof, and the price for exportation to the United States was the same or less.

The Government offered, and there were admitted in evidence, three reports of Treasury representatives. The first, marked exhibit 2, referred to certain rectifying discs not offered or sold by the manufacturer in the ordinary course of trade in Germany, and such product was used only by the patentee in his own plant for the manufacture of rectifying elements. Clearly, this exhibit 2 has no reference to the issue here before the court.

The second report, exhibit 3, pertains to this particular 45-mm. photo cell, manufactured by the Süddeutsche Apparate-Fabrik G. m. b. H., the manufacturer of the 45-mm. photo cell imported by the appellee herein. The Treasury representative interviewed the office and sales managers who supplied the information for the report. The cells are made to order upon receipt of the buyer's instructions. Respecting the foreign value, the Treasury representative stated that from his information there had been no demand up to May 9, 1939, the time of the interview, for the 45-mm. cell, No. T–10062–f, although prices were quoted to domestic buyers. There also was a copy of the factory's price list, dated October 12, 1938, which had been sent to the factory's domestic sales agents, quoting for quantities of 1,000 or more a price of RM 2.10 each, net. Although no evidence of inland sales in 1938 or 1939 for the 45-mm. photo cell was submitted, the Treasury representative stated he was informed that the company "was ready at all times to do business in Germany at the prices quoted" and that a verbal offer had been made to a Nuremberg firm in the latter part of 1938. The principal reason for a lack of orders in the German market covering 45-mm. cells was due to the fact that the manufacturer was engaged in patent litigation with another German manufacturer of photo cells, and buyers hesitated to place orders for

fear of becoming involved in the litigation. Some mention was also made of the restriction of use of the photo cells.

The third report, exhibit 4, pertains to an investigation of Electrocell Gesellschaft of Berlin, Germany, relative to certain light elements #883, 50 x 37 mm., and the same element cut in three parts, each 16½ x 37 mm. Identical elements were freely offered for sale in the home market in Germany, as per a price list, in quantities of about 1,000 pieces. Offers for sale to certain firms were shown, although no sales resulted, but regular deliveries were made to two firms of the 50 x 37 mm., or the cut 16½ x 37 mm. Also light elements #781, 45-mm. round, were sold to a firm in Erlangen. This sale was cited by the Treasury representative to illustrate the difference in price on an order for 20,000 pieces, which the delivery showed to have been sold at RM 2.85 each, while the price list for 1,000 pieces shows RM 3.20 for #781. Exhibits attached to the report consisted of a photostat of the price list, exhibit 4–A, and translation, exhibit 4–B, which discloses the following:

Catalog #781, 45-mm round, useful surface dimensions of 38-mm round, having size of useful surface 11.1 sq. cm. and weight of 15 gr., priced at RM 3.20 each.

Exhibit 4, citing the price of 45-mm. round at RM 3.20, was used by the appraiser as the basis of his finding that merchandise similar to the merchandise imported herein was sold in the home market at a price higher than the entered value.

Examiner Molay testified for the Government that from a visual examination of the imported merchandise and of the sample of item 781, he found that the merchandise was made from approximately the same material and was of the opinion they were used for the same purpose, and from such visual examination considered them to be similar. The witness was of the opinion from his examination that the physical dimensions were the same; that both were 45-millimeter round cells of the same thickness; that both were made primarily of selenium, which is placed or deposited on a metal base and then covered with a lacquer of some sort, leaving a ring of bare metal around the periphery or circumference of the cell.

In rebuttal of the foregoing testimony and evidence of the Government, the appellee called Alexander T. Williams. He testified that he was the chief of the photometric engineering division of the importer; that he wrote the original specifications for the photo cell in question; and that he was responsible for the testing for acceptances of those cells. The specifications he drew were marked in evidence as exhibit 5. A photo-electric cell, representative of the imported merchandise, was admitted in evidence as exhibit 6. The actual report made by importer's inspection department was admitted in evidence as exhibit 7. A booklet entitled "Technical Data" was admitted in evidence as exhibit 8. The witness testified that the

cells were tested to ascertain whether or not they conformed to the specifications in the catalog.

The witness clearly demonstrated that the two cells were entirely different in construction, there being a difference in the useful area, the electrical output, the current output, and the efficiency in generating current, and that, from his experience, the two cells were not interchangeable. The cost of production of the imported merchandise would be less than the cost of production of exhibit 6, the so-called similar merchandise. Of course, the selling price of exhibit 6 in the home market was higher than the selling price of the imported merchandise.

*United States* v. *Thomas & Co.*, 21 C. C. P. A. 254, T. D. 46788, involved the similarity of certain paper tubes and bobbins used to hold yarn during spinning, as sold in the United States and in the country of production. There, the sole question was whether or not *similar* goods were sold in the home market which met the requirement in the definition of foreign or export value. The lower court stated:

They may not be mechanically interchangeable as equipment for certain looms, because they are not mechanically identical in construction, but they are commercially interchangeable *because they are of the same commercial value, and it is commercial value which determines whether or not they are "similar merchandise" as required to meet the definition of foreign value in the statute.* [Italics not quoted.]

The Government argued upon appeal that the Czechoslovakian goods were not similar because they were not commercially interchangeable and being of the same commercial value would not make them commercially interchangeable. The appellate court stated, however:

* * * we think the finding of the court below was correct insofar as it sanctions the acceptance of equality of commercial value as an important element in determing when goods are "similar" within the meaning of sections 402 (c) and 402 (d) of the Tariff Act of 1930.

     \*      \*      \*      \*      \*      \*      \*

* * * Certainly the equality in value and similarity in cost of production, under the circumstances of this case, were very pertinent and material considerations in determining similarity.

In view of the factors of dissimilarity between the imported photo cells and the cells upon which the appraiser based his appraisement, we can find no error in the court below in not finding the price of so-called similar photo cells to be the proper value of the merchandise in question.

As for the sale of *such* merchandise in the home market of Germany the chief engineer of the company, under whose personal supervision these particular cells were manufactured, and who was personally familiar with the sale for home consumption of such cells, in an affidavit, stated positively that these cells were freely offered for sale

to all purchasers for consumption in Germany. He also stated that the vast majority of sales at wholesale were in quantities of 1,000 or more, and that the price in such quantities was RM 2.10 each, plus packing. The Treasury representative's report, exhibit 3, also refers directly to the merchandise at bar. He reported that there had not been any sales in the home market, but he found a price list quoting for quantities of 1,000 or more a price of RM 2.10 each, net. He reported that the company was ready and willing to do business in Germany at the quoted price and that at least one verbal offer had been made. Of course, as stated by the trial court, there is a direct conflict between the evidence of the importer and the Government upon the subject of the home market value and sales therein, and the trial court resolved that conflict in favor of the evidence presented in the affidavit, rather than in favor of the evidence of the Treasury representative in the report, upon the authority of *United States* v. *Wiener*, 15 Ct. Cust. Appls. 428, T. D. 42594. It will be observed that the evidence is not conflicting upon the point of the usual wholesale quantities nor that of the principal markets for these cells. The Treasury representative's report also notes that there was a price list for home market use and that at least one offer had been made for the sale of such merchandise, and quotations had been made to certain buyers.

In the case of *Oceanic Trading Co.* v. *United States*, 21 C. C. P. A. 146, T. D. 46478, the court stated, relative to sales under the definition of value in section 402 of the Tariff Act of 1930, as follows:

* * * The court did not hold that the statements contained in the affidavit were not justified by actual facts. It may be that it had in mind the failure of affiant to disclose actual sales of the involved or identical merchandise for consumption in Italy. If so, it is sufficient to say that neither foreign nor export value, as defined by subdivisions (c) and (d), respectively, of section 402 of the Tariff Act of 1930, is limited to the market value or price at which such or similar merchandise is *sold*, but includes the price at which it is *freely offered for sale.* Accordingly, where it has been established that such or similar merchandise was freely offered for sale, as required by the statute, the absence of evidence of actual sales is not of vital consequence. [Italics quoted.]

This court, from a careful review of the evidence in this case, is of the opinion that the weight of evidence fully establishes a foreign value for the particular photo cells in question, as found by the trial court, and adopts the findings of fact of the trial court as the findings of this court as follows:

1. That the merchandise consisted of selenium electric-photo cells imported from Germany.

2. That said photo cells were freely offered for sale in the usual course of trade to all purchasers for home consumption in Germany.

3. That the principal markets in Germany for the sale of such cells were Nuremberg and Erlangen.

4. That the usual wholesale quantities in which said merchandise was sold were quantities of 1,000 or more photo cells.

5. That the sale for export of such selenium electric-photo cells was confined to certain selected and exclusive agents.

6. That the price at which such photo cells were freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, was RM 2.10 each, plus packing.

As a matter of law it is the holding of this court—

1. That the dutiable value for the selenium electric-photo cells covered by this application for review of reappraisement is the foreign value, as that value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938 (19 U. S. C. § 1402 (c)).

2. That said foreign value is as set forth in finding of fact No. 6, *supra.*

3. That there is no export value for said merchandise.

Judgment will be entered affirming the decision and judgment of the trial court