R. MOHR & SONS ET AL. v. UNITED STATES (No. 3099)[1]

United States Court of Customs Appeals, January 9, 1929

Frank L. Lawrence (Martin T. Baldwin of counsel) for appellants.

Charles D. Lawrence, Assistant Attorney General (Hugo P. Geisler and Oscar Igstaedter, special attorneys, of counsel), for the United States.

[1] T. D. 43198.

[Oral argument October 4, 1928, by Mr. Igstaedter]

Before GRAHAM, Presiding Judge, and BLAND and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from the judgment of the United States Customs Court in reappraisements 49576–A and 49577–A. The merchandise consists of binoculars imported into the United States from Germany.

In reappraisement 49576–A the binoculars were entered at $7 each, plus a luxury tax of 15 per centum. They were appraised at $11 each. In reappraisement 49577–A binoculars imported at a later date were entered at $11 each, to meet advances in the case then pending, reappraisement 49576–A, and appraised at the entered value.

The trial justice held that the dutiable value of the merchandise was $11 each. This judgment was affirmed by the United States Customs Court. The judgment of the court below was based upon the proposition that the involved binoculars were similar to those sold in Germany at $11 each. The sole question for decision is: Is the judgment supported by any substantial evidence?

It appears from the record that the importers purchased the binoculars in quantities of 1,000 at a price of $7 each.

Considerable evidence was introduced by the parties.

The evidence introduced by importers tended to prove that only "selected" or "first" quality binoculars were sold for consumption in Germany; that they were sold in small quantities from one to four in number; that, due to these facts, they commanded a price of $11 each; that those sold for export to the United States and to other countries were not of selected, but of second quality, and were "known as the regular run of the factory"; that there were defects in many of such glasses; and that, for these reasons, they were sold for export for much less than those sold in Germany for home consumption.

Counsel for importers presented their case upon the theory, and evidence was introduced to support it, that there was a foreign but no export value for first-quality binoculars, and that there was an export but no foreign value for second-quality binoculars. It was not disputed that the foreign value of "selected" binoculars was $11 each. It is claimed, and evidence was introduced to support it, that the export value of the involved binoculars was approximately $7 each.

The Government introduced in evidence Exhibit 3, a report of a Government agent. In many respects this report is consistent with the information furnished by importers. The report shows that it is very difficult to manufacture perfect binoculars; that it is not correct to designate those sold in Germany for home consumption as first

quality, and those sold for export to the United States as second quality, but that it would be more accurate to describe the former as selected quality, and the latter as "unsorted" quality. It may be helpful to quote a portion of this report:

Export prices are always based upon special quotations made in accordance with the quantities to be ordered. They are always lower than inland prices, chiefly by reason of the fact that the latter cover merchandise of selected quality, but also on account of the larger quantities ordered. Another factor that influences export prices, Mr. Atzbach claimed, is the competition of the French optical industry, one French manufacturer selling a glass similar to their "Telacht" at $6 each.

One of the imported binoculars, referred to in the record as "an official sample," was offered in evidence as Exhibit 4.

It appears that the binoculars covered by reappraisement 49576–A were exported in July, 1924, and that those included in reappraisement 49577–A were exported a few months later, probably in October or November of the same year.

The Government offered in evidence Exhibit 2, an affidavit of one William A. Ritz. In view of its importance, we quote it:

  *   *   *   *   *   *   *

William Ritz, being duly sworn, deposes and says that he is an importer of merchandise of the character the subject of these reappraisements; that he has been importing such merchandise for a period of five years; that he is and has been the sole agent for the Hensoldt Handelsgesellschaft, Wetzlar, Germany, for the past five years; that he examined the official sample marked Exhibit 4, reappraisement 49577–A, etc.; that from his examination he finds said exhibit to be representative of the first-quality binoculars manufactured by the Hensoldt Handelsgesellschaft.

Your deponent further says he received quotations of the prices of binoculars of the first quality manufactured by the Hensoldt Handelsgesellschaft, Wetzlar, Germany, as follows:

EIGHT BY TWENTY-FOUR HENSOLDT BINOCULARS

| | |
|---|---|
| Sept. 4, 1924 | $11. 30 |
| Sept. 9, 1924 | 11. 00 |
| Sept. 23, 1924 | 11. 00 |
| Oct. 2, 1924 | 11. 00 |

That there was no appreciable change in the value of the merchandise similar in all material respects to the merchandise the subject of this reappraisement during the year 1924.

Your deponent is of the opinion and belief, based upon his familiarity, that the market value on the date of exportation herein, July 16, 1924, of the merchandise in question was $11 each.

  *   *   *   *   *   *   *

It will be observed that the witness Ritz stated that the official sample, Exhibit 4, was representative of the first quality of binoculars, manufactured and sold for home consumption in Germany; that there was "no appreciable change in the value" of the involved merchandise during the year 1924; and that the foreign value thereof during that

year was $11 each. This is some substantial evidence. See *United States* v. *Wiener*, 15 Ct. Cust. Appls. 428, T. D. 42594. It supports the judgment below. We have no authority to review the evidence for the purpose of determining its weight, but are required to affirm the judgment if there be any substantial evidence in the record to sustain it. As there is such evidence, the judgment must be, and is, therefore, *affirmed*.