UNITED STATES *v.* SEMON BACHE & Co.

**No. 4713.**—Invoices dated Birmingham, England, October 3, March 21, 1935.
Certified October 4, March 22, 1935.
Entered at New York October 18, April 5, 1935.
Entry Nos. 745291, 809091.

Second Division, Appellate Term

(Decided on second remand from United States Court of Customs and Patent Appeals January 29, 1940)

*Joseph R. Jackson,* Assistant Attorney General (*Daniel I. Auster* and *Samuel D. Spector,* special attorneys), for the appellant.
*Jerome G. Clifford* for the appellees.

Before TILSON, KINCHELOE, and DALLINGER, Judges; TILSON, J., dissenting

KINCHELOE, Judge: These appeals to reappraisement involve the proper dutiable value of certain gauge glasses, known as the Eureka and the Hercules qualities, imported from England in two shipments, one of which was made in April, 1935, and the other in October, 1935.

Entry was made of the Eureka quality at various unit prices, less discounts of 10 per centum, 10 per centum, and 10 per centum, which, it is conceded by the respective parties, is the equivalent of the foreign manufacturer's list prices less 80 per centum. The Hercules quality was entered at various unit prices less discounts of 75 per centum, less 10 per centum less 2½ per centum.

The merchandise was appraised at the foreign manufacturer's list prices, less 50 per centum discount, less 2½ per centum cash discount, less, as to the Eureka quality, 1 pence per dozen pieces for cost of fusing ends.

The instant cases have been the subject of previous litigation both in this court and in the Court of Customs and Patent Appeals. They were originally tried in this court before the single judge, who found that the entered values represented the proper dutiable values for the merchandise (Reap. Dec. 3951). An application for review of said judgment was filed by the Government, and this division in its decision reported in Reap. Dec. 4039, affirmed the judgment of the single judge. In said decision (Reap. Dec. 4039), we held that 500 feet or more of the Hercules quality, and 1,000 feet or more of the Eureka, were the usual wholesale quantities for the respective qualities,

and in reaching that conclusion we accepted the expert testimony of importer's witnesses, Tomey and Sobel, who had had years of experience in buying and selling in the trade the qualities of gauge glasses in question, and whom we considered to be thoroughly qualified to present such testimony on the question of a usual wholesale quantity of such or similar merchandise. In our determination of the issues in said decision, we regarded records of sales of the Eureka quality in quantities less than 1,000 feet and of the Hercules in quantities less than 500 feet of no probative value since they did not reflect, in view of the testimony of importer's said witnesses, sales in wholesale quantities of such merchandise.

The Government appealed said judgment of this division to the Court of Customs and Patent Appeals, and in its decision in *United States* v. *Semon Bache & Co.* (25 C. C. P. A. 387, T. D. 49466), the court held in substance that there was no evidence of record to establish that the sales to retailers for resale were not sales made in the ordinary course of trade; and that there was no evidence of record to establish that such sales and sales to other purchasers in quantities of less than 1,000 feet of the Eureka quality, and less than 500 feet of the Hercules quality, were not sales in wholesale quantities except mere assertions by plaintiff's witnesses which were mere conclusions based upon facts appearing of record, and therefore should not have been given any weight by this court in determining the usual wholesale quantity of the merchandise in question in the ordinary course of trade in England. Accordingly, the appellate court reversed the judgment of this court and remanded the cases "for a reconsideration of the issues on the record as made and in accordance with the views herein expressed."

When the cases came before us on remand, we again very exhaustively reviewed all of the evidence offered by the importer and the Government, and in our decision and judgment reported in Reap. Dec. 4475, we adhered to the findings made in our previous decision, Reap. Dec. 4039. The appellate court in its opinion in *United States* v. *Semon Bache & Co.*, 27 C. C. P. A., C. A. D. 67, followed its earlier decision involving the instant cases, T. D. 49466, *supra*, and again reversed the judgment of this court and remanded the cases "for a reconsideration of the issues on the record as originally made and in accordance with the views expressed in our decision of February 28, 1938, *supra*," and respectfully declined to reconsider the record as made.

We have outlined the proceedings heretofore had in these appeals to reappraisement for the purpose of setting forth and emphasizing our views, which we have consistently maintained throughout this entire litigation, and which we still believe to be a proper determina-

tion of the issues presented herein. We based our conclusions that the usual wholesale quantity of the Eureka quality was at least 1,000 feet and the Hercules at least 500 feet, largely, if not entirely, on the testimony of importers' witnesses, who testified unequivocally that sales of lesser quantities of the respective qualities, that is less than 1,000 feet of Eureka and less than 500 feet of Hercules, were not sales in wholesale quantities of such merchandise. It was our opinion then, as it is now, that the oral testimony of importers' witness, Sobel, and the statements of importers' witness, Tomey, contained in his affidavits, Collective Exhibits 1 and 2, are of sufficient probative value to establish that the entered values of the instant merchandise correctly represent the dutiable values thereof.

However, in view of the fact that our appellate court in its second opinion in this matter, C. A. D. 67, *supra*, respectfully declined to reconsider the record as made, and further, in view of the fact that in its first opinion, T. D. 49466, *supra*, said court held that there was no evidence of record to establish that the sales to retailers for resale were not sales made in the ordinary course of trade, and that there was no evidence of record to establish that such sales and sales to other purchasers in quantities of less than 1,000 feet of the Eureka quality, and less than 500 feet of the Hercules quality were not sales in wholesale quantities except mere assertions of plaintiff's witnesses, which, in its judgment, were mere conclusions based upon facts appearing of record, and therefore should not have been given any weight by this court in determining the usual wholesale quantity of the merchandise in question in the ordinary course of trade in England, we are, therefore, at this time, considering the questions presented by the instant appeals *solely in the light of the views expressed by said court in its opinion, T. D. 49466, supra.*

In said opinion, the Court of Customs and Patent Appeals states the issue before us as follows:

It is agreed that the foreign values are the dutiable values of the merchandise. There is no dispute respecting the correctness of the manufacturer's unit list prices in the foreign market, and the sole issue before the courts below was as to the discounts which should be allowed from the manufacturer's list prices in order to make foreign values.

The proper determination of said issue involves ascertaining the *usual wholesale quantities* of the two qualities of gauge glasses under consideration, as such statutory phrase has been applied in finding foreign value within the definition of such value as set forth in section 402 (c) of the Tariff Act of 1930. As judicially interpreted, usual wholesale quantities of a commodity are the wholesale quantities in which a major portion of sales or offers for sale of such commodity are made. *United States* v. *Richard*, 15 Ct. Cust. Appls. 143,

T. D. 42216; *Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237; *United States* v. *Minkus*, 21 C. C. P. A. 382, T. D. 46912; *Goldmark* v. *United States*, 22 C. C. P. A. 358, T. D. 47378.

There are included in the record before us records of sales of both qualities of gauge glasses involved herein. Attached to the affidavit (Collective Exhibit 1) of the importers' witness, Tomey, is a list of 708 sales of the Eureka quality made during the months of September, October, and November, 1934, to the various classes of purchasers referred to herein, to wit, small users, retailers, wholesalers, and large users. Attached to the affidavit (Collective Exhibit 2) of said witness is a list of 419 sales of the Hercules quality made during the same period to the same classes of purchasers. Both of said lists of sales were also included as part of the special agent's report which was offered in evidence by the Government at the trial below and admitted as Collective Exhibit 5. Additional reports of sales of both of said qualities of gauge glasses are also incorporated in the special agent's report which was offered by the Government at the trial below and admitted in evidence as Collective Exhibit 3. Said report contains records of 20 sales of the Eureka quality covered by invoices dated October, November, and December, 1933, and January, 1934; and 11 sales of Hercules quality covered by invoices dated October and November, 1933.

We have completely analyzed all of said records of sales, attached to and made part of the above-mentioned exhibits, and we are unable to find therefrom any support for the dutiable values claimed by the importer. On the basis of the present record, as we are required to consider it under the mandate of our appellate court, it is our opinion that the evidence herein is wholly insufficient to overcome the presumption of correctness attached to the dutiable values for each of the qualities of gauge glasses in question as found by the appraiser. We therefore hold that the proper dutiable values of the Eureka quality and the Hercules quality of gauge glasses involved herein are those found by the appraiser.

It will be borne in mind that following the mandate of our appellate court our conclusion herein has been reached without giving any weight, either to the oral testimony of importers' witness, Sobel, or to the statements contained in the affidavits offered by the importers' witness, Tomey, relating to the usual wholesale quantities of the instant merchandise. Nor do the statements contained in the special agent's reports introduced by the Government and received in evidence as Exhibits 4, 5, and 6, have any probative value so far as this case is concerned. In the light of the reasoning applied by our appellate court to the testimony of importer's witnesses, Sobel and Tomey, with respect to the usual wholesale quantity of each of the qualities of

gauge glasses in question, it is our judgment that the statements contained in the special agent's report, which was offered by the Government at the trial below and admitted in evidence as Collective Exhibit 3, relative to the usual wholesale quantities of the instant merchandise, are entitled to no probative value, and accordingly, our conclusion herein has been reached, also, without giving any weight to such statements contained in said exhibit.

So, we repeat that we have carefully considered *each* of said Exhibits 3, 4, 5, and 6 and the lists of *all* sales attached to Collective Exhibits 1 and 2 and Exhibits 3 and 5, and on the basis of the *entire* record, as we have considered it, we find the following facts:

(1). That the merchandise covered by these appeals to reappraisement consists of certain gauge glasses, known as the Eureka and the Hercules qualities, imported from England.

(2). That the proper basis of appraisement for such merchandise is foreign value as such value is defined in section 402 (c) of the Tariff Act of 1930, and that there is no export value for either of said qualities, or if so, it is not higher than the foreign value.

(3). That the correct dutiable foreign values of such merchandise are the values found by the appraiser.

Accordingly, we hold as matter of law that the correct dutiable foreign values of the qualities of gauge glasses in question, known as the Eureka quality and the Hercules, are the values found by the appraiser as set forth in finding of fact (3).

The judgment of the lower court is therefore reversed and judgment will be rendered accordingly.

### DISSENTING OPINION

TILSON, Judge: The statement of the history of this case by my associates renders a restatement by me unnecessary. The value of the merchandise in this case depends upon the discount to be deducted from the list price, and the discount to be deducted from the list price depends upon the quantity constituting a usual wholesale quantity. Therefore, in order for us to properly determine the dutiable value of this merchandise we must first determine what quantity or amount constitutes a usual wholesale quantity. This my associates have failed to do, and, in failing so to do, I feel they have committed error, and I am therefore unable to join in the conclusion they have reached. Once it has been determined what quantity constitutes a usual wholesale quantity, it is only a question of applying thereto the proper and applicable discounts in order to arrive at the proper dutiable value of the merchandise. Not having found a usual wholesale quantity for the merchandise, it is my view that it is impossible for my associates to arrive at the proper dutiable value,

and it is on this point in particular that I disagree with my associates.

In its second remand our appellate court, in referring to its previous decision, stated:

We took the view that there was no substantial evidence in the record to support what amounted to a negative finding below, namely, that sales of gauge glasses in England by the manufacturers thereof to retailers, for resale, were not sales in wholesale quantities in the ordinary course of trade, which was a vital question in the case, * * *.

As I understand the above, it is a construction and interpretation by the appellate court of the vital finding and holding in its former decision.

Referring to the first decision of the appellate court, we find the following:

In its decision, the appellate division of the Customs Court stated that all sales of less than 1,000 feet of the Eureka quality gauge glasses, and less than 500 feet of the Hercules quality, were "not in *usual wholesale quantities*," and therefore should not be included in determining the *usual* wholesale quantities * * *.

In determining *usual* wholesale quantities, *all* wholesale quantities of the merchandise involved should, of course, be taken into account, and what the appellate division undoubtedly intended to say was that sales of less than 1,000 feet of the Eureka quality and less than 500 feet of the Hercules quality were *not* sales in *wholesale quantities*, and, therefore, should not be considered in determining the *usual* wholesale quantities.

*　　*　　*　　*　　*　　*　　*

Considering the provisions of section 402 (c), *supra*, and the dictionary definitions of the terms "wholesale" and "retail", we think it may be said that, as a general proposition, where goods are sold in the ordinary course of trade to retailers, for resale, the other essentials in the statutory definition of foreign value being present, such sales are sales in wholesale quantities, and should be considered together with other sales in wholesale quantities in "determining what are usual wholesale quantities."

*　　*　　*　　*　　*　　*　　*

There is no evidence of record to establish that the sales to retailers, for resale, referred to in the testimony of the witnesses for appellee, were not made in the ordinary course of trade. Nor is there any evidence of record to establish that such sales, and sales to other purchasers in quantities less than 1,000 feet of the Eureka quality and 500 feet of the Hercules quality, were not in wholesale quantities.

While not the only view expressed, I consider the above to be an important and the decisive view expressed by the appellate court. While I cannot and do not agree that in this case, sales to purchasers in quantities less than 1,000 feet of the Eureka and less than 500 feet of the Hercules quality are sales in wholesale quantities in the *ordinary course of trade*, for the reasons stated in my former concurring opinion, under the decisions of the appellate court no other course remains open to us, but to accept sales by the manufacturer in England to retailers for resale in quantities of less than 1,000 feet of the Eureka quality and less than 500 feet of the Hercules quality as being sales in wholesale quantities in the ordinary course of trade, and as such to be

considered with all other sales in wholesale quantities in determining the *usual* wholesale quantity, and this I am here doing.

The views expressed by the above-quoted portions of the decisions of the appellate court point to no other conclusion than that the appellate court felt it was necessary for us to determine what quantity or amount of the involved merchandise constitutes a usual wholesale quantity, in order to arrive at and determine the proper dutiable value of this merchandise. In this connection I wish to also point out that in both their previous decisions in this case my associates placed themselves on record as holding the view that it was necessary for us to find a usual wholesale quantity for this merchandise.

The appellate court has with commendable frankness assumed all responsibility for its holdings, as set out above, in the following language:

If we committed error the fault is ours and no criticism should attach to the Customs Court so far as our decision there is concerned.

In its second remand the appellate court made the following statement:

If the *importer* was aggrieved by our former decision and deemed it erroneous (and that is what its counsel now contends, nothing new being presented), the course it should have pursued was that of seeking a rehearing before us, not before the Customs Court.

In the interest of keeping the record straight, and with due respect to our appellate court, it should be stated that between the date of the first decision of the appellate court and the date of our second decision, nor at any other time, did the importer seek any rehearing before the Customs Court. As much might have been gathered from the following statement in my former concurring opinion:

In view of the mandate of the appellate court remanding this case for reconsideration of the issues on the record as made, counsel for the respective parties have not been asked for additional briefs, but we have proceeded to a reconsideration of the issues on the record as made without the addition thereto of a single word.

When this division first reviewed the original decision of the trial court, it had before it for consideration all the evidence in the record. In our present reconsideration of the case, we still have all the same evidence before us for a determination of the "issues on the record as originally made in accordance with the views expressed" in the first decision of the appellate court. It is our duty under the law to consider and weigh all the evidence contained in the record "as originally made," just as we did in our original decision. In so doing, however, the appellate court having expressed the view that there was no substantial evidence to support the negative finding that all sales of less than 1,000 feet of the Eureka and less than 500 feet of the Hercules were not in wholesale quantities, because the court concluded from that negative finding, as it might well have done, that all sales in

wholesale quantities were not considered and taken into account in this court's finding of 1,000 feet of the Eureka and 500 feet of the Hercules as the usual wholesale quantities, in that we failed to consider sales to retailers, for resale, in less quantities, as sales in wholesale quantities, and so construing this finding, the appellate court held that the statements of witnesses Sobel and Tomey as to usual wholesale quantities were mere conclusions.

It should be pointed out that the testimony of witness Sobel to the effect that sales of less than 1,000 feet of the Eureka and less than 500 feet of the Hercules quality gauge glasses were not sales in wholesale quantities was based, not upon the lists of sales in evidence in this record, but upon the following, brought out by Government counsel on cross examination:

R. X Q. How do you know that a thousand feet is the usual ordinary quantity, is the usual wholesale quantity ordinarily sold in the course of trade of this merchandise for home consumption?—A. Well, as I told you before, I have been over to Europe, looked at some of the records, and have received certified invoices, copies of certified invoices from the manufacturer, and also in talks with the directors of the company who produced the gauge glasses.

Irrespective of the particularity with which the above testimony, brought out on cross-examination, is scrutinized, and irrespective of the particularity with which this entire record is scrutinized, I am unable to find therein one word which in any way indicates that this witness based his testimony that 1,000 feet of the Eureka quality and 500 feet of the Hercules quality gauge glasses were usual wholesale quantities, upon the lists of sales in evidence herein. Nor am I able to find any evidence that those who purchased in quantities less than 1,000 feet of the Eureka and less than 500 feet of the Hercules quality, whether small users, consumers, retailers, wholesalers, or large users, received smaller discounts varying according to the quantities purchased.

However, since these conclusions of witnesses Sobel and Tomey are unnecessary to a decision in this case, as will be hereinafter seen, I am and have excluded them from my consideration.

However, when we have considered said sales to retailers, for resale, and the statements of said witnesses in accordance with the views expressed by our appellate court, the entire record is before us for consideration exactly as it was in our original decision, and we are not only at liberty to do so, but it is our duty to consider and weigh all the evidence in the case, just as we did in our original decision, and in this manner determine, not only the usual wholesale quantity, but the proper dutiable value of the merchandise, as well.

My associates state with definiteness and precision that:

The proper determination of said issue involves ascertaining the *usual wholesale quantities* of the two qualities of gauge glasses under consideration, * * *.

I am in hearty accord with the above statement of my associates, but in their failure to do that which they state is necessary to a proper determination of the issue here presented, when there is ample evidence before them upon which to find a usual wholesale quantity, is another point upon which I strongly disagree with my associates.

My associates also state as follows:

* * * As judicially interpreted, usual wholesale quantities of a commodity are the wholesale quantities in which a major portion of the sales or offers for sale of such commodity are made.

I am also in disagreement with the above definition of a usual wholesale quantity. In the case of *United States* v. *Minkus*, 21 C. C. P. A. 382, the appellate court stated the rule as follows:

* * * the language "in the usual wholesale quantities," contained in section 402 (b), *supra*, was intended by the Congress "to refer to a major portion of the sales or offers for sale (in *wholesale quantities*) of the merchandise in question, * * *. [Italics mine.]

In my determination of the usual wholesale quantity, so far as applicable, I have followed the rule laid down by the appellate court, rather than the rule laid down by my associates. It is axiomatic that if a premise be false, any conclusion based upon such premise must likewise be false also.

In accordance with the mandates of the appellate court I am, in reconsidering this case, considering all sales to wholesalers and all sales to retailers, for resale, however small the quantity, together with all other sales in like quantities, as sales in wholesale quantities, and therefrom I am determining in what quantity the greatest number, or major portion, of said sales are made.

First I have analyzed, examined, and considered the sales of the Eureka quality gauge glasses, as shown by the list attached to Collective Exhibit 1. In examining said list of sales I find one sale to a retail dealer of 4 inches, which, as I understand, is the class referred to by the appellate court as sales to retailers, for resale. This is the smallest quantity I find among those sales we are required to consider and take into account as sales in wholesale quantities. Under the rulings of our appellate court I must accept this sale of 4 inches as a sale in a wholesale quantity, notwithstanding the fact that single glasses are manufactured and sold in lengths of over 84 inches. Therefore, any sale of 4 inches and over, to whomsoever, must be considered as a sale in a wholesale quantity and taken into account in finding what this list of sales indicates to be a usual wholesale quantity.

In said list attached to said Collective Exhibit 1 I find 691 sales, ranging in quantities of from 4 inches up to 21,548 feet. My examination and analysis of said list of sales, when considered independently of all other evidence of record, shows that the most numerous sales in any one size or quantity was 14 sales of 18 feet each.

I have also analyzed, examined, and considered the sales of the Hercules quality gauge glasses, as shown by the list attached to Collective Exhibit 2. In examining said list of sales the smallest quantity I find sold to either a wholesaler or a retailer, for resale, is 6 inches. Under the mandate of our appellate court I must accept this sale of only 6 inches as a sale in a wholesale quantity, notwithstanding the fact that single glasses are manufactured and sold in lengths of 84 inches. Therefore, any sale of 6 inches and over, to whomsoever, must be considered as a sale in a wholesale quantity and taken into account in finding a usual wholesale quantity. In said list of sales I find 416 sales ranging in quantities of from 6 inches to 10,416 feet. My analysis and examination of said sales, when considered alone and independently of all other evidence of record, shows that the most numerous sales in any one size or quantity was 10 sales of 3 feet each.

Singularly enough, 8 of the 10 sales of the Hercules quality and 5 of the 14 sales of the Eureka quality, which I must use in finding a usual wholesale quantity by this method, are sales to small consumers, and are included in the innumerable sales of very small quantities to consumers most of whom buy only sufficient amounts to meet current demands.

Therefore, under the rule laid down in the case of *United States* v. *Minkus, supra,* considering said lists of sales of Eureka gauge glasses alone and independently of all other evidence, 18 feet being the quantity in which the largest number, or major portion, of said sales were made in any one quantity, would be the usual wholesale quantity of the Eureka gauge glasses. Likewise considering said list of sales of Hercules quality gauge glasses alone and independently of all other evidence, 3 feet being the quantity in which the largest number, or major portion, of said sales were made in any one quantity, would be the usual wholesale quantity of the Hercules quality gauge glasses.

The other lists of sales in evidence herein I have also examined and analyzed, and find that they do not show a result materially different from that obtained by my examination and analysis of the lists of sales attached to Collective Exhibits 1 and 2, respectively.

In my consideration of the evidence of a usual wholesale quantity of the gauge glasses herein, I am not confined to the analysis of sales heretofore set out, but I must also give consideration to and weigh the other evidence in this record on this point, including the report of the special agent, Collective Exhibit 3, together with all other evidence in the record before me as to what amount or quantity of said gauge glasses constitutes a usual wholesale quantity. As further evidence of the quantity of said gauge glasses which constitutes a usual wholesale quantity, I quote the following from Collective Exhibit 3:

*The Eureka gauge glasses are usually sold in the home market at a per pound price which is equal to approximately 82% off the list price.*

*USUAL WHOLESALE QUANTITY*

*The usual wholesale quantity of gauge glasses sold in the home market is from 4 or 5 cwt. on up, when sold by weight, and from 12 dozens upwards when sold by dozens.*

\*        \*        \*        \*        \*        \*        \*

Exhibits "F" are two copies of home market sales of the "Separator Tubes".

\*        \*        \*        \*        \*        \*        \*

The Eureka gauge glasses are sold in the home market under the name of "Separator Tubes". These are identical in all respects to the Eureka gauge glasses, only they are used for a different purpose. [Italics mine.]

In connection with the above it should be noted that discounts of 80 per centum and 2½ per centum are the exact equivalent of a single discount of 82 per centum, and 82 per centum is the exact discount the special agent found was allowed on sales of the Eureka quality gauge glasses, when sold in the home market in *usual wholesale quantities.*

An examination of said Collective Exhibit 3 with reference to the weight of the gauge glasses shows the following:

½″ glass weighs 1 lb. 5 oz.   per doz. ft. or 1.75 oz. per ft.
⅝″   "      "      2 lbs.        "    "    "  "  2.66  "    "    "
¾″   "      "      2 lbs. 12 oz. "    "    "  "  3.66  "    "    "

Therefore 4 or 5 cwt. of the ½-inch glasses would be equivalent to from 4,090 to 5,120 feet; 4 or 5 cwt. of the ⅝-inch glasses would be equivalent to from 2,690 to 3,360 feet and 4 or 5 cwt. of the ¾-inch glasses would be equivalent to from 1,960 to 2,440 feet, when the usual wholesale quantity in which the glasses are usually sold in the home market in England by weight is converted into feet. It should be noted that when the special agent found that the usual wholesale quantity of gauge glasses sold in the home market was from 4 or 5 cwt. on up, he did not limit his finding to the Eureka gauge glasses, but his finding as to a usual wholesale quantity covers both the Hercules and Eureka qualities.

Exhibit F, forming a part of the special agent's report, Collective Exhibit 3, shows one sale in the home market in England of one quantity of 1,950 separators, 10¾ inches in length; another quantity of 2,200 separators, 8¼ inches in length; another sale of 5,600 separators, 10½ inches in length, and another quantity of 8 gross separators, 10½ inches in length. When these sales are figured into feet the first one shows a quantity of 1,746⅞ feet, the second shows a quantity of 1,512½ feet, the third shows a quantity of 4,900 feet, while the fourth shows a quantity of 1,008 feet. These four sales submitted by the special agent, together with approximately 70 other sales in quantities of 1,000 feet and over strongly support the finding of the special agent that 4 or 5 cwt. is a usual wholesale quantity.

Thus it will be seen that if we should discard all the plaintiffs' evidence and rely solely upon that offered by the Government, we

would arrive at a usual wholesale quantity for both qualities of said gauge glasses of 1,000 feet or more.

The evidence given by the special agent in said Collective Exhibit 3 was based upon information obtained by him from a personal inspection and examination of the exporter's regular books of account, and other records which were placed at his disposal and also supplementary information furnished by the exporter.

It should also be observed that the lists of sales in evidence hereinbefore referred to cover a period of only 3 months, while the information obtained by the special agent was through a personal inspection and examination of the exporter's regular books of account, and other records which were placed at his disposal, and presumably, at least, covered transactions of the exporter over a longer period of time than 3 months.

As authority for holding that the evidence given by the special agent alone is sufficient to support a judgment that 1,000 feet and over of the gauge glasses in question is a usual wholesale quantity, I quote the following from the case of *Mohr* v. *United States*, 16 Ct. Cust. Appls. 448:

> *Your deponent is of the opinion and belief*, based upon his familiarity, *that the market value* on the date of exportation herein, July 16, 1924, *of the merchandise* in question *was $11 each.*
>
>      *      *      *      *      *      *      *
>
> *It will be observed that the witness Ritz stated* that the official sample, Exhibit 4, was representative of the first quality of binoculars  *  *  *; that there was no "appreciable change in the value" of the involved merchandise during the year 1924; and *that the foreign value* thereof during that year *was $11 each. This is some substantial evidence.* See *United States* v. *Wiener*, 15 Ct. Cust. Appls., 428, T. D. 42594. *It supports the judgment below.* We have no authority to review the evidence for the purpose of determining its weight, but are required to affirm the judgment if there be any substantial evidence in the record to sustain it. As there is such evidence, *the judgment must be, and is, therefore, affirmed.* [Italics mine.]

My examination and analysis of said Collective Exhibit 3, when considered alone and independently of all other evidence, shows that were we to rely solely upon that exhibit (the Government's own evidence) we would arrive at a usual wholesale quantity of said gauge glasses of 4 or 5 cwt., which, when converted into feet, equals 1,000 feet or more for both qualities of said gauge glasses.

Considering Collective Exhibits 1 and 2 in connection with said Collective Exhibit 3, it will be seen that the evidence of the special agent respecting the usual wholesale quantity (4 or 5 cwt.) which, when converted into feet, equals 1,000 feet or more of the two qualities herein, finds complete substantiation in the form of 75 actual sales of 1,000 feet or more of both qualities.

While giving no consideration to the aforesaid conclusions of witnesses Sobel and Tomey, I am nevertheless unable to agree that the

only evidence we are permitted to consider is the lists of sales in evidence herein. I find nothing in either of the decisions of the appellate court which even suggests placing such a limitation upon this court in its reconsideration of this case on the record as originally made. Aside from the said conclusions of witnesses Sobel and Tomey, I find much other evidence in the record which I feel not only should, but must, be considered by us in reaching a proper conclusion in this case.

Let me repeat that the appellate court took the view that there was no substantial evidence to support what amounted to a negative finding by this court in its original decision that sales of gauge glasses in England by the manufacturers thereof to retailers, for resale, were not sales in wholesale quantities in the ordinary course of trade, for the simple and only reason that this court in determining a usual wholesale quantity did not consider and take into account all sales in wholesale quantities, in that sales to retailers, for resale, were not considered by this court as sales in wholesale quantities.

I find nothing in the decisions of the appellate court requiring us to decide this case entirely and exclusively upon the lists of sales in evidence herein. While I give no weight or credence to the aforesaid conclusions of witnesses Sobel and Tomey, still there is other testimony of these two witnesses, stripped of these conclusions, together with other evidence, which the appellate court has not suggested it was improper for us to consider and weigh.

Entirely disregarding the aforesaid conclusion of witness Tomey, we have the following statement of fact by this witness in Collective Exhibit 1, as to the Eureka quality, which stands uncontradicted and without criticism by the appellate court:

\* \* \* that the invoice prices less the discounts thereon noted were the prices actually paid therefor; that such net prices are equivalent to 80 per cent from our standard list prices, that the prevailing market prices for said quality in England for home consumption when sold in usual wholesale quantities and in the ordinary course of business were no higher.

That for more than ten (10) years, my company has freely offered "Eureka" quality gauge glasses for sale to all purchasers of 1,000 feet or more at prices equal to the invoice prices less discounts thereon noted.

\*      \*      \*      \*      \*      \*      \*

\* \* \* that the allowance of the wholesale discount depends solely upon the purchase of 1,000 feet or more without regard to diameter of glass and without regard to the classification of the purchaser.

\*      \*      \*      \*      \*      \*      \*

\* \* \* That my company \* \* \* is ready and willing to sell to any and all purchasers, whether small users, consumers, retailers, wholesalers, or large users, "Eureka" quality gauge glasses identical to those shipped to the United States for the account of Semon Bache & Company, covered by the above invoices, in quantities of 1,000 feet or more, at prices equivalent to those granted to the said Semon Bache & Company, \* \* \*.

Collective Exhibit 2 contains similar evidence of this same witness with regard to the Hercules quality gauge glasses.

In my opinion, the lists of sales in evidence herein, taken individually and collectively, representing all the sales made by the exporter over a period of only 3 months, to anyone who cared to purchase, and in any quantity whatsoever, including innumerable sales of very small quantities to *consumers* most of whom buy only sufficient amounts to meet current demands, and sales in quantities as small as 4 and 6 inches, utterly fail to present a true picture and a proper index of a wholesale and a usual wholesale quantity in this case.

Considering all the sales in evidence herein to wholesalers, all the sales to retailers, for resale, together with all other sales in like quantities to whomsoever, as sales in wholesale quantities, and giving no weight or credence to the aforesaid conclusions of witnesses Sobel and Tomey, and after carefully considering and weighing all the evidence before me, in the light of the mandates of the appellate court, upon the weight thereof, I find as a fact, that at the dates of the exportations thereof, both qualities of the gauge glasses herein were sold and freely offered for sale to all purchasers in the country of exportation in the ordinary course of trade in usual wholesale quantities of 1,000 feet or more.

As to the discounts applicable to both qualities of these gauge glasses, the evidence clearly establishes that discounts of 75 per centum, 10 per centum, and 2½ per centum off the list prices as shown on the invoices, are applicable to the Hercules quality when sold in usual wholesale quantities, and that discounts of 80 per centum and 2½ per centum off the list prices as shown on the invoices are applicable to the Eureka quality, when sold in usual wholesale quantities.

As to the proper basis of appraisement, I accept the agreement of counsel that the foreign value is the proper basis of appraisement.

For the reasons hereinbefore stated I therefore find as a fact:

1. That the merchandise herein consists of Eureka and Hercules quality gauge glasses imported from England.

2. That the foreign-market value for both qualities is the proper basis of appraisement.

3. That the usual wholesale quantity in which such or similar merchandise was sold and freely offered for sale to all purchasers in the principal markets of England at or about the dates of exportation of the instant merchandise in the ordinary course of trade, was 1,000 feet or more.

4. That the proper and applicable discounts to said merchandise when sold in usual wholesale quantities were 80 per centum and 2½ per centum off the list prices, as shown by the invoices for the Eureka quality, and 75 per centum, 10 per centum, and 2½ per centum off the list prices, as shown by the invoices, for the Hercules quality.

I therefore conclude as matter of law that the proper dutiable values for the two qualities of the gauge glasses herein are the values

set out in finding of fact No. 4. The judgment of the trial court finding the proper dutiable foreign values of this merchandise to be as set out above should, therefore, be affirmed.